M. C. REVILLE, EMMA MUSE, *et al.*, v. ALBERT O. DUBACH *et al.*

**No. 11102.**

M. C. REVILLE *et al.* v. EMIL G. DUBACH.

**No. 11103.**

1. WILL—*Election by Acts in Pais.* Although the statute provides for a formal election by the widow whether she will take under the will of her deceased husband, in lieu of the share which the law gives her, an election may be made by acts *in pais*, and hence the record is not the only proof of such election.

2. —— *Nature of Proof of Election.* The proof of an implied election must be clear and satisfactory, but a deliberate and intelligent choice is deemed to be as binding as though it were formally made.

3. —— *Estopped by Acts to Deny Election.* If, after ascertaining her rights and learning what she could take under the will as well as by the law, she deliberately proceeds as though an election had been made, accepts the benefits of the will and actually takes under it, she will be concluded, and will not be heard to say that no election has been made.

4. ILLEGITIMATE CHILD—*Proof of Recognition.* A question having arisen as to who was the father of a child through whom the mother claimed, proof tending to show general and notorious recognition of the child as his own by him was competent to establish the rule of inheritance.

5. EVIDENCE—*Transactions with Deceased Persons.* A party to an action may testify in respect to transactions or communications had by him with a deceased person, where the adverse party is not the executor, administrator, heir at law, next-of-kin, surviving partner or assignee of such deceased person, and where the title to the cause of action was not acquired *immediately* from him.

Error from Doniphan district court; R. M. EMERY, judge.  Opinion filed June 10, 1899.  Reversed.

*M. C. Reville*, *D. H. Martin*, and *Waggener, Horton & Orr*, for plaintiffs in error.

*J. J. Baker*, and *Ryan, Davis & Reeder*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : Each of the above-entitled causes involves the title to eighty acres of land in Doniphan county, and both of the tracts together constituted the farm of Thomas Williams, who had an unquestioned title to the same on April 6, 1870.  At that time he made a will by which he gave to his wife, Sarah A. Williams, a life estate in all of his land, and provided that at her death it should go to his two sons, William B. Williams and Thomas G. Williams, and be divided equally between them.  On April 12, 1870, he died, leaving the wife and two sons above mentioned as his only heirs.  On August 12, 1870, which was about a month after William B. Williams became of age, the will was admitted to probate, and it is claimed on one side, but denied on the other, that the widow expressly elected to take under the will, and also that her conduct in respect to the land was equivalent to an election, and estopped her to deny that she elected to take under the will.  It is claimed, but disputed, that on March 5, 1871, William B. Williams married Emma Muse, then known as Emma Stotts, and whatever the fact may be in respect to them, it appears that they lived together as husband and wife until his death, on September 9, 1873. On October 6, 1872, a child was born to them, named

Ella Williams, and she died in less than a year after her father's death, leaving her mother, Emma, as her only heir. On October 9, 1876, Thomas G. Williams, the remaining son of Thomas Williams, deceased, died intestate, unmarried, and without issue, and no administration was ever had upon his estate. Some time after the death of her husband, Sarah A. Williams married David Lee, and on August 19, 1880, they together executed a deed purporting to convey the land in controversy to the Dubachs, who have since held possession of the same. Since the death of William B. Williams, Emma has intermarried with W. W. Muse, and she claims a one-half interest in the property in controversy as the wife of William B. Williams and as the only heir of her daughter, Ella Williams.

M. C. Reville entered into a contract with Emma Muse, under which he claimed an equity in the property, depending upon the successful termination of this proceeding. The Dubachs insist that Emma Muse was not the wife of William B. Williams, and that the child Ella Williams was not entitled to inherit as his daughter; that, as the widow of Thomas Williams, Sarah A. Lee inherited an undivided one-half of the land, and as the mother of the sons she inherited the remaining undivided one-half of the land, giving her the entire estate, and that her conveyance of the land to the Dubachs was complete and effectual. The trial resulted in favor of the Dubachs, and the titles claimed by them were quieted as against the claims of the opposing parties.

One of the important questions before the trial court was whether or not the widow elected to take under the will. No record of such an election was found in the probate court, and the contention of the Dubachs is that the record of that court is the only

evidence by which an election can be established. This view was sustained by the trial court, and much of the testimony offered tending to show an election in fact was excluded. In this there was error. It seems to be well settled that an election may be made by acts *in pais*, and if the acts are plain and unequivocal, and done with full knowledge of the widow's rights and of the condition of the estate, it is as binding as though it was formally made. If she makes a deliberate and intelligent choice under the will, and thereafter proceeds as though an election were made, she is estopped from claiming under the statute. So, it has been held, "an election by a widow to take under her husband's will in lieu of dower at law may be evidenced by matter *in pais* as well as of record, but it must be shown that she had requisite knowledge of the value and character of her husband's estate, and that her intention was consistent with such choice." (*Bradfords v. Kents*, 43 Pa. St. 474.)

In *Thompson v. Hoop*, 6 Ohio St. 480, a question somewhat similar to the one we are considering was involved. There was a devise of real estate to a widow for life, and the remainder in fee to a son. The widow failed to make a formal election to take under the will, as the statute prescribes, but actually and in fact took under the will and had the use and occupancy of the land devised for a series of years, and it was held that she was estopped to deny her election to take under the will.

*Stilley v. Folger*, 14 Ohio, 610, is cited as an authority to show that the only mode of proving an election is by the record, unless the record is lost or destroyed. This statement of the law is disapproved by the supreme court of that state in subsequent decisions. In

*Millikin v. Welliver*, 37 Ohio St. 460, it is said that the decision in *Stilley v. Folger*, supra, seems at variance with *Thompson v. Hoop*, supra, and numerous other cases where an estoppel *in pais* was proved and held effectual.

Although the question has not been directly adjudicated in this court, *Sill v. Sill*, 31 Kan. 248, 1 Pac. 556, and *James v. Dunstan*, 38 Kan. 289, 16 Pac. 459, recognize the doctrine of implied election and that the widow may thereby be estopped from claiming in opposition to such election.    See also *Craig's Heirs v. Walthall*, 14 Gratt. 518; *Chace v. Gregg*, ( Tex. Civ. App.) 31 S. W. 76; *Nimmons v. Westfall*, 33 Ohio St. 213; *Rawley v. Sanns*, 141 Ind. 179, 40 N. E. 674; *In re Smith's Estate*, 108 Cal. 115, 38 Pac. 950; *Burroughs v. De Couts*, 70 Cal. 361, 11 Pac. 734; *Reed v. Dickerman*, 12 Pick. 146; *Watson v. Watson*, 128 Mass. 152; *Clay v. Hart*, 7 Dana, 1; 6 A. & E. Encycl. of L. 254; 1 Pomeroy's Eq. Jur., §§ 514, 515.

Our own cases, as well as the other cited authorities, require that the proof to sustain an implied election be clear and satisfactory.    The acts and declarations relied upon must be unequivocal, and must clearly evince an intention to elect and take under the will, and the choice must be made by the widow with the full knowledge of her rights and of the status of the estate.    If, after she has ascertained her rights, and what she would acquire under the law as well as by the will, she deliberately proceeds as though an election had been made, accepts the benefits of the will, and actually takes under it, she will be concluded, and will not be heard to say that no election has been made. In the present case the widow filed a written petition in the probate court asking that the will be admitted to probate, and that such other proceedings

might be had thereon as would establish and make valid the will in law. It is claimed that at the same time, and accompanying this act, statements were made by her of a positive and unmistakable character, showing an intention to elect and the fact of an election. This testimony strongly tended to show an election by the widow, and its exclusion was error. Proof that she occupied and used the entire farm, and received the rents and profits therefrom, was material to the case, and should have been received. We cannot determine at this time how much proof will be required to show an election, nor that the testimony offered and excluded would have been sufficient for that purpose. Parties claiming an election are entitled to produce such competent proof as they may have to sustain an election, and the court or jury trying the case can then determine under the rules of law whether the facts are sufficient to constitute an election.

Testimony was offered tending to show that, after the child Ella was born, her father, William B. Williams, generally and notoriously recognized her as his child. A question having arisen whether William B. Williams and Emma were legally married, and as Emma inherits from her child Ella, who would in turn inherit from the father, the testimony was competent and should have been received. Even if William B. and Emma were never legally married, and if Ella was his illegitimate child, the testimony excluded was material, because under the statute illegitimate children inherit from the mother and the mother from the children, and they also inherit from the father whenever they have been recognized by him as his children, but such recognition must have been general and notorious, or else in writing. (Gen. Stat.

37—60 KAN.

1897, ch. 109, §§ 21, 22 ; Gen. Stat. 1889, ¶ ¶ 2613, 2614.)

The testimony of Reville in respect to communications made to him by William B. Williams was ruled out, and counsel attempt to justify the ruling under the code. (Gen. Stat. 1897, ch. 95, § 333 ; Gen. Stat. 1889, ¶ 4417.) While Reville was a party to the action, the adverse party was not the executor, administrator, heir at law, next-of-kin, surviving partner or assignee of William B. Williams, nor was title to the cause of action acquired *immediately* from him, and hence the testimony does not fall within the inhibition of the statute. Similar objections to. the testimony of Emma Muse should have been overruled.

This disposes of the material questions in the case, and for the errors mentioned the judgments in the two cases will be reversed and the causes remanded for new trials.