M. ELLA PIRTLE, *Appellant*, v. T. G. PIRTLE *et al.*, *Appellees*.

No. 17,074.

### SYLLABUS BY THE COURT.

WILLS—*Election by Widow—Repudiation—Estoppel.* Under the facts stated in the opinion it is held that a widow who consented in writing to her husband's will can not repudiate her consent because .she subsequently discovered that the testator's estate was larger than she anticipated; and it is further held that by a course of conduct deliberately and intelligently chosen she elected to take under the will.

Appeal from Butler district court. Opinion filed May 6, 1911. Affirmed.

### STATEMENT.

The plaintiff brought suit to set aside her consent to her husband's will given in writing at the time the will was executed. The petition alleged that the testator left personal property worth $20,000, a quarter section of land occupied as .a homestead and worth $10,000, and a section of land worth $15,000. The will gave the plaintiff all the testator's household goods and furniture, the homestead for life, subject to an annual charge of $100, and after the payment of debts and a legacy of $1000, gave her an equal share of the personal property with the testator's brothers and sisters, seven in number. The plaintiff was made one of the executors of the will, which was duly probated within a few days after it was executed. The plaintiff

duly qualified as one of the executors of the will and was still acting as such when she commenced her suit, more than a year after the will was probated.

The grounds upon which the plaintiff asked to have her consent annulled were the following: Because of her mental and physical condition she could not and did not understand the meaning and effect of the terms and conditions of the will and of the writing evidencing her consent to it, and was in fact ignorant of the terms, meaning and effect of those instruments. She was ignorant of the law of descents and distributions, and no one informed her of her rights under the law and of her rights under the will, or of the effect of her consent to the will. When the will was probated, and for a long time afterward, she was mentally incapacitated to understand what was being done with the will or with her husband's estate. When the will was probated her rights under the will and under the law were not explained to her, she was given no opportunity to elect to take under the law, and she did not elect to take under the will. At no time did she knowingly or understandingly consent in writing or otherwise to her husband's willing away from her more than one-half of his property.

The answer, besides denying the facts relied upon to avoid consent, pleaded ratification, estoppel and election by conduct.

There was evidence that the homestead was worth from $75 to $80 per acre and could be rented for from $600 to $700 per year. The plaintiff was a second wife and had been married to the testator about fourteen months at the time of his death. When they were married she knew him to be a well-to-do man. When she consented to the will she knew of the homestead, the section of land, of cattle (there seems to have been about 200 head), of a considerable number of horses and mules, of $600 in the bank and of money loaned to a Mr. Overholser. She never knew that her husband

was indebted to anyone.   After her husband's death she continued in possession and enjoyment of the homestead.

The court found all the issues against the plaintiff. The findings of fact and conclusions of law which are now material follow:

### "FINDINGS OF FACT.

"(6)  That on the 23d day of July, 1907, the plaintiff, believing that Elisha B. Pirtle was going to die from the injuries he had received, desired that said Elisha B. Pirtle should execute a last will and testament, and of her own volition and free will asked and requested said Elisha B. Pirtle to make a will.   And the plaintiff caused T. A. Kramer, an attorney at law of El Dorado, Kan., to be called to the house of plaintiff and said Elisha B. Pirtle for the purpose that said T. A. Kramer should prepare a last will and testament for said Elisha B. Pirtle, and that such will when so prepared should be executed by said Elisha B. Pirtle.

"(8)  That said T. A. Kramer on said 23d day of July, 1907, went to the home of plaintiff and Elisha B. Pirtle, and said Elisha B. Pirtle, in the presence of plaintiff, informed said T. A. Kramer that he desired him to draw up a last will and testament for him, the said Elisha B. Pirtle.   That said Elisha B. Pirtle, in the presence of plaintiff, instructed said T. A. Kramer how to prepare and what to include in said will.   That during the time said Elisha B. Pirtle was giving said instructions to T. A. Kramer, as to the drawing of said will, he at different times spoke to the plaintiff about the provisions of said will, and in substance asked her if said will as he was instructing the same to be drawn was satisfactory to her.   Said plaintiff in reply said to said Elisha B. Pirtle, in substance, that she wanted him to make the will as he desired it and it would be satisfactory to her.

"(9)  That while said will was being prepared and before the execution thereof said T. A. Kramer had a private conversation with the plaintiff in which said T. A. Kramer informed plaintiff, in substance, that said Elisha B. Pirtle could not will more than half of his property away from her without her consent, and that he could not will his property in the manner in which he

had instructed said will to be drawn without her consent, and that it was optional with plaintiff whether she consented to said will or not, and that she need not consent to it unless she desired to do so, and said T. A. Kramer further in said conversation fully informed plaintiff as to her rights under the law in the event that she did not give her consent to said will; that said plaintiff informed said T. A. Kramer, in substance, that she desired to give her consent to said will as said Elisha B. Pirtle had instructed it to be drawn.

"(10) That said T. A. Kramer prepared a last will and testament in accordance with the instructions given to him by said Elisha B. Pirtle, and said will after being prepared was read over to said Elisha B. Pirtle, in the presence of plaintiff, and said Elisha B. Pirtle and plaintiff expressed herself as being satisfied with said will.

"(12) That after said will had been executed by Elisha B. Pirtle, and witnessed by said Maud Teter and Jacob Teter, the consent of plaintiff to such will was read to her and plaintiff signed the same in the presence of said Maud Teter and Jacob Teter, and at her request said Maud Teter and Jacob Teter witnessed her said consent and signed the same as witnesses.

"(15) That during the time said Elisha B. Pirtle was giving his instructions as to how he desired said will to be drawn, and in the presence of plaintiff, he stated that he desired M. Ella Pirtle and John Ellis and T. A. Kramer should act as executors of his said will and of his estate.

"(17) That after the death of Elisha B. Pirtle, on the 29th day of July, 1907, plaintiff and said John Ellis and said T. A. Kramer appeared in the probate court of Butler county, Kansas, and said John Ellis produced said will, and said plaintiff signed, verified and filed with said probate court of Butler county, Kansas, a petition asking that said will be admitted to probate as the last will and testament of said Elisha B. Pirtle. . . . And on said day in the presence of plaintiff said T. A. Kramer stated to said probate court that it would not be necessary that plaintiff should elect whether she would take under the will or under the law of descent and distribution, because she had in writing consented to the terms of said will, to which

50—84 KAN.

statement plaintiff assented, and for this reason no formal election was made by said plaintiff.

"(18) That on said 29th day of July, 1907, said will was duly admitted to probate as the last will and testament of said Elisha B. Pirtle, and on said day plaintiff and said John Ellis and said T. A. Kramer duly qualified in said probate court as executors of said last will and testament and of the estate of Elisha B. Pirtle, deceased.

"(19) That after said executors had qualified, said plaintiff, as one of the executors, entered upon the discharge of her duties as such executrix, jointly with said John Ellis and T. A. Kramer, and took part and assisted and advised with said other executors in having the inventory and appraisement of the personal property of said Elisha B. Pirtle made and returned in court, and in the sale of the personal property and in the collection of claims due said estate and in the settlement and compromise of disputed claims and in the allowance and payment of the debts of the said estate and in filing and verifying an account of the administration of said estate, and in the making of a partial distribution of the personal property of said estate, and assisted and took part generally in the matters pertaining to said estate, and performed her duties as executrix for the period of more than one year after said will had been admitted to probate, without making any objections thereto, or to said will.

"(20) That said plaintiff accepted and received from the executors of said will and estate the sum of two thousand dollars ($2000) which was ordered to be paid to her by the probate court at the partial settlement and distribution of the personal property of said estate, in which settlement she had taken part, and executed her receipt for said money and in said receipt ratified said order of distribution.

"(22) That prior to the marriage of the plaintiff and Elisha B. Pirtle, plaintiff had resided at the home of said Elisha B. Pirtle, and at the time of the execution of the will and her consent thereto, and at the time of her marriage to said Elisha B. Pirtle, had a general idea of his financial condition.

"(23) That at the time the will was probated and at the time plaintiff entered upon the discharge of her duties as executrix of said will and said estate, and

Pirtle v. Pirtle.

during all the time she continued to act as such executrix she had a reasonably accurate and complete knowledge of the property owned by the said Elisha B. Pirtle in his lifetime.

"(24) That the plaintiff was at the time of her marriage to said Elisha B. Pirtle, and ever since has been, a woman of fair intelligence, understanding, and had a reasonably good education.

"(25) That at the time plaintiff requested Elisha B. Pirtle to have a will drawn and at the time she procured T. A. Kramer to be sent for for the purpose of drawing a will for the said Elisha B. Pirtle, and at the time said Elisha B. Pirtle instructed T. A. Kramer how he desired said will drawn, and at the time T. A. Kramer informed plaintiff as to her rights and at the time said Elisha B. Pirtle executed said will and at the time plaintiff executed her consent to said will, she was in great distress over the condition of her husband, but was in her right mind and was of sound mind and memory and was mentally competent and understood and knew what she was doing and knew the purpose of such will and knew the terms and effect thereof, and knew what her legal rights were in the premises.

"(26) That at the time plaintiff filed her petition to have said will probated, and at the time she qualified as executrix of the will and estate, and during all the time she acted as such executrix, and at the time she accepted the two thousand dollars, in accordance with the order of the distribution made by the probate court under said will, said plaintiff was in her right mind and was of sound mind and memory and understood and knew what she was doing and the nature and effect of the acts she was doing.

"(27) That relying upon the consent of the plaintiff and of her acts, plaintiff and the other executors have made a partial distribution of said estate in accordance with the terms of said will, have paid money to various legatees in accordance with the provisions of said will.

"(28) That plaintiff by her acts has elected to take under the provisions of said will and not under the law of descent and distribution.

"(29) That at the time of the marriage and at the time of his death said Elisha B. Pirtle was worth between forty thousand and fifty thousand dollars.

"CONCLUSIONS OF LAW.

"That plaintiff is not entitled to recover in this action, and that her prayer should be denied, that the said last will and testament of Elisha B. Pirtle, hereinbefore referred to, should be adjudged and decreed to be the last will and testament of said Elisha B. Pirtle, and valid and binding upon the plaintiff and all the parties to this suit. And that the consent of plaintiff to said last will and testament should be adjudged to be, and is adjudged to be, the valid, legal and binding consent of plaintiff to the terms of said will, and that plaintiff be and is estopped from denying the provisions of said will or her consent thereto."

Judgment was rendered in accordance with the conclusions of law and the plaintiff appeals.

*E. D. Stratford, V. P. Mooney, H. W. Schumacher, Milton Moore,* and *S. A. Handy,* for the appellant.

*George J. Benson, T. A. Kramer, A. L. L. Hamilton,* and *B. R. Leydig,* for the appellees.

The opinion of the court was delivered by

BURCH, J.: The argument in support of the chief assignment of error depends upon a view of the evidence which the trial court refused to adopt. The controlling testimony was given orally and was conflicting. The trier of the facts has found the facts. The findings are abundantly sustained by the evidence. For nearly fifty years the court has uniformly held in such cases that the findings are conclusive on appeal. The rule will be adhered to in this case.

It is said that the plaintiff's written consent to her husband's will was not binding upon her because of her ignorance of her husband's financial status. The point is an afterthought. It was not made in the petition and the twenty-second finding that at the time the plaintiff consented to the will she had a general idea of her husband's financial condition was gratuitous. The evidence upon which this finding is based came from

Pirtle v. Pirtle.

the plaintiff herself and is recited in the statement of facts. It shows that she knew of the bulk of her husband's property and of the general state of his financial affairs. Acting upon the knowledge she possessed she procured the will to be drawn, was present during its preparation and was consulted in reference to the provisions to be inserted for her benefit. The matter was not one in which the law required her to choose between two situations, neither of which she created, but it was one of active concurrence in the result of a transaction which she desired should take place and which she aided in bringing about. With a general understanding that her husband was a man of means, and with full knowledge of her right to one-half of all he possessed, she was satisfied with a relatively small portion of what she knew he owned. She so expressed herself to her husband when he was apparently seeking to please her. She so expressed herself privately to the attorney who advised her of her rights. She was of fair intelligence and reasonably well educated, was mentally competent, understood and knew what she was doing, knew the purpose, terms and effect of the will, and gave her unconstrained consent to it. She then proved the will, became its executrix, proceeded with a settlement of the estate, made partial distribution, and entered into the enjoyment of portions given her by the will. Under all these circumstances the discovery that the estate was larger than she had anticipated affords no reason for setting aside the consent she had previously given.

It is not necessary that the decision be rested upon the ground just considered. The court found as a fact an election by conduct to take under the will. The evidence was amply sufficient to warrant the finding. (*Reville v. Dubach,* 60 Kan. 572; *Cook v. Lawson,* 63 Kan. 854.)  In the case of *Reville v. Dubach,* supra, the syllabus reads as follows:

"Although the statute provides for a formal election

by the widow whether she will take under the will of her deceased husband, in lieu of the share which the law gives her, an election may be made by acts *in pais,* and hence the record is not the only proof of such election.

"The proof of an implied election must be clear and satisfactory, but a deliberate and intelligent choice is deemed to be as binding as though it were formally made.

"If, after ascertaining her rights and learning what she could take under the will as well as by the law, she deliberately proceeds as though an election had been made, accepts the benefits of the will and actually takes under it, she will be concluded, and will not be heard to say that no election has been made." (60 Kan. 572, syl. ¶¶ 1-3.)

The syllabus of the decision in the case of *Sill v. Sill,* 31 Kan. 248, reads as follows:

"In order that the acts of the widow shall be regarded as equivalent to an election to take under the will, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended by her acts to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence, without a deliberate and intelligent choice, will not be an election." (Syl. ¶ 5.)

Every requirement of this rule is fully met by the findings of fact.

Other matters discussed in the briefs are not of sufficient moment to require the publication of an opinion respecting them.

The judgment of the district court is affirmed.