No. 22,869.

ANNIE L. MOORE, *Appellee*, v. FRANK I. SAMUELSON, GUS W. SAMUELSON (et al.), *Appellants*.

### SYLLABUS BY THE COURT.

1. WILL—*Husband and Wife—Joint Will in Form—Several Will of Husband in Fact.* Where a husband and wife make what is in form a joint will devising property to their children, but the will only disposes of property belonging to the husband, the will should be considered as the several will of the husband, and the joinder of the wife in the making of the devises is to be disregarded as mere surplusage.

2. SAME—*Effect of Withholding Will from Record for More than Three Years.* A person who has knowledge of the existence of a will and has it under her power and control for over three years after the death of the testator and who fails to offer it for probate within that time loses any rights of property which the will may attempt to devise to her; but the long delay in offering the will for probate does not prejudice the rights of others to whom property is devised by the will if they have not been personally derelict in respect to such delay.

3. SAME—*Assent of Wife to Testamentary Disposition of Husband's Property.* When a wife joins in the making of her husband's will devising property to their children, her signature to the will, if made voluntarily and understandingly and in the presence of the requisite witnesses to the will, is sufficient to satisfy the statute requiring the assent of one spouse to the testamentary disposition of property by the other spouse.

4. SAME—*When Will Takes Effect—When Title to Property Passes to Devisees.* Where a will specifically and clearly devises property to various persons, and then provides that its provisions shall not take effect until the testator and his wife are both dead, the title to the property passes to the devisees on the death of the testator, but the enjoyment of the property by them is postponed until the death of the wife.

Appeal from Smith district court; CHARLES L. KAGEY, judge *pro tem.* Opinion filed November 6, 1920. Reversed.

*L. C. Uhl,* and *L. C. Uhl, jr.,* both of Smith Center, for the appellants.

*E. S. Rice,* and *W. S. Rice,* both of Smith Center, for the appellee.

Moore v. Samuelson.

The opinion of the court was delivered by

DAWSON, J.: The main question in this lawsuit concerns the validity of a will.

The plaintiff sued her three brothers for partition of her deceased father's estate, on the assumption that a joint will made by her father and mother in their lifetime was void on its face, and void also because it was not offered for probate within three years after her father's death. The will, abridged, reads:

"JOINT WILL.
"Last Will and Testament of Charles Samuelson and Christine
Samuelson, Husband and Wife.

.  .  .  .  .  .  .  .  .  .  .  .

"*Know all Men by These Presents*, and to all to whom these presents may concern be this known, that we Charles Samuelson, of the age of 72 years and upwards, and Christine Samuelson· of the age of 75 years and upwards, of the Town of Athol, in Smith County, State of Kansas, and each being of sound and disposing mind and memory do make, publish and declare this our last will and testament in the following manner, That is to say . . .

"*Second*. We, and each of us, do hereby give, devise and bequeath unto our beloved son, Frank Samuelson . . . (158 acres described.)

"*Third*. We, and each of us, do hereby give, devise and bequeath unto our beloved son, Gus Samuelson, . . . (157 acres described.)

"*Fourth*. We, and each of us, do hereby give, devise and bequeath unto our beloved son, John Samuelson, . . . (80 acres described.)

"*Fifth*. We, and each of us, do hereby give, devise and bequeath unto our beloved daughter, Annie Moore (formerly Annie Samuelson . . .), [a house and messuage in Athol described] upon condition that said Annie Moore is to pay the said testators herein the sum of six ($6) dollars per month rental during the life time of said testators and each of them, and at the death of both of said testators to become the property of said Annie Moore, if the above provisions are complied with by her.

"*Sixth*. We, and each of us do hereby give, devise and bequeath unto our said sons, John Samuelson, Gus Samuelson, and Frank Samuelson, all our personal property, moneys, chattels and effects that we may die seized of . . .

"The above and foregoing provisions and conditions of·this our last will and testament are not to be in force or effect until we, the said Charles Samuelson and Christine Samuelson, testators herein, and each of us are' both dead, then this instrument to be and become in full force and effect."

The trial court's findings of fact are not controverted. In part, they read:

"2. About two weeks after the death of Charles Samuelson [April 22, 1909] his two sons, Gus Samuelson and Frank Samuelson, knew that a will had been made and had some idea about the terms of the will, but they had not seen the will and did not exactly know its contents.

"3. The widow, Christine Samuelson, had the will under her control, it being in the hands of Uhl & Uhl, attorneys of Smith Center, Kansas.

"4. The latter part of August, 1912, Gus Samuelson, Frank Samuelson and their mother, Christine Samuelson, procured the will from the office of Uhl & Uhl and caused it to be filed for probate. It was admitted to probate by the probate judge of Smith county, Kansas, on or about the 24th day of August, 1912, but the executors named in the will did not qualify and no action was taken by the court or the executors further with reference to administering the estate of Charles Samuelson.

"5. Christine Samuelson died December 5th, 1918.

. . . . . . . . . . . .

"6. The court further finds that the defendants, Gus W. Samuelson and Frank Samuelson, have occupied the premises that were attempted to be devised to them ever since the death of their father as tenants of their mother, Christine Samuelson, and have paid her rents for said premises ever since their father's death.

"7. The evidence shows that the defendant, John C. Samuelson, never did occupy the premises attempted to be devised to him and has never had anything to do with the land.

"8. The evidence also shows that the plaintiff, Annie L. Moore, was living in the house, which the will attempted to devise to her, at the time of her father's death, and was paying to him for said property, and after his death she continued to occupy it. She did not in fact pay any rent after her father's death, but the testimony shows it was the understanding she was to pay rent and her mother either neglected to collect it or didn't care to collect it.

"9. The evidence also shows that the funeral expenses of Charles Samuelson were paid by Christine Samuelson, and that Christine Samuelson drew the rents from all the property except the house occupied by Annie L. Moore during her lifetime, and that there remains in the estate or joint estate of Christine Samuelson and Charles Samuelson, the sum of $750.00 in cash besides other property, and that this property and money remains after paying the funeral expenses and expenses of the last illness of Christine Samuelson."

The trial court held the will void and decreed partition; hence this appeal.

Counsel for appellants cite standard authorities sustaining joint and mutual wills. Such wills are valid. (*Carle v. Miles,* 89 Kan. 540, 132 Pac. 146; *Lewis v. Lewis,* 104 Kan. 269, 178

Pac. 421.) We are also reminded that there is a modern Kansas rule for the interpretation of wills—that the testator's intention shall govern and that such intention is to be gleaned from the entire text of the will, giving due significance to all its parts. That, too, is correct. (*Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621.) But so far as this record shows, the father, Charles Samuelson, owned all the property bequeathed. by this will. His wife owned none of it. When the wife, Christine, elected to take under this will, what property did the will bestow on her? None, not a word does the testament utter as to what she was to receive. So the fact that Christine joined in this will and in the bequeathing of her husband's property can only be regarded as surplusage (*Allen v. Allen,* 28 Kan. 18), and the will is to be sustained if at all, by considering it as the will of Charles Samuelson.

"The wife, having nothing on which the will could operate, is held to be a mere cipher in the transaction. The will, therefore, was that of the husband in the same manner as though the wife had not signed it, and all her declarations and acts must be rejected as surplusage." (*Allen v. Allen,* supra, p. 24.)

The findings of fact are that Charles died on April 22, 1909, and the will was not offered for probate until August 24, 1912 —three years, three months and eighteen days thereafter. During all that time it was under the power and control of Christine.

The statute says:

"No lands, tenements or hereditaments shall pass to any devisee in a will who shall know of the existence thereof, and have the same in his power and control for the term of three years, unless within that time he shall cause the same to be offered for or admitted to probate; and by such neglect the estate devised to such devisee shall descend to the heirs of the testator." (Gen. Stat. 1915, § 11785.)

In view of this statute, Christine, the mother, could not acquire any interest in her husband's property under the will. But we see no infirmity in the will so far as it devises property to the three sons and the daughter. Only two of the children, Gus and Frank, knew of the existence of the will before its probate, and it was not under the power and control of either of them. There was no suppression of the will on their part, nor on the part of Anna and John.

When Christine joined with her husband in the making of the will she assented in the presence of two witnesses to the disposition of the property made by her husband. That should be construed as a satisfaction of the statutory provision requiring the assent of one spouse to the testamentary disposition of the property of the other spouse. (Gen. Stat. 1915, § 11790.)

Again, it may be said that Christine assented to her husband's disposition of his property when she withheld the deed from probate until the statute barred any right in herself under the will. And, still again, when the will was probated she waived her statutory rights as widow of Charles, and neither formally nor informally did she claim any such right. It was, of course, an abortive act for her, after withholding the will from probate for over three years, to elect to take under the will, because such election would not cure her delay in probating it, nor revive her extinct statutory rights.

If we were to read into this will the intention of the parties, as gathered from the will itself and the evidence available, we would inevitably arrive at the same result. Christine joined with her husband in the making of her husband's will. Both intended that Frank, Gus, John and Anna should have the properties as devised to them by Charles, the husband and father. Undoubtedly Charles and Christine intended that a life estate should intervene in favor of the survivor before it should descend to their children in the portions devised to them. They obviously forgot to insert a clause providing for such life estate. And while no court could remedy this will by interlining an amendment to cover that omission, the omission in fact wrought no hardship to Christine, the widow. Informally, with assent and acquiescence of her children, she did in fact enjoy the life estate until she died. The questions relating to her life tenancy which might have arisen if challenged in her lifetime need not concern us now.

But appellee insistently urges upon our attention the clause in the will which says that the devises to the children should not take effect until Charles and Christine were both dead. We do not overlook that clause, and we think it falls under the ordinary rule that it be construed with the other provisions of the instrument to uphold it rather than to defeat the will. In *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, it was declared:

Moore v. Samuelson.

"A will is to be construed, not alone by its language, but by the condition of the testator's family and estate; and the judicial expositor should put himself as far as possible in the position of the testator, and take into consideration the circumstances surrounding him when the will was executed." (Syl. ¶ 1.)

In *Holt v. Wilson,* 82 Kan. 268, 108 Pac. 87, it was said:

"Where one part of a will clearly indicates a disposition in the testator to create an estate in fee it will not be restricted or cut down to any less estate by subsequent vague or doubtful expressions." (Syl. ¶ 1.)

In the analogous case of *Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690, a deed of conveyance contained a clause providing that it should not take effect or be in force until the death of the grantor, but at that time title in the grantee should become absolute. The court said:

"The real intent of the grantor being the object of our search, the inquiry is, not what do his words mean in strict legal contemplation, but in what sense did he use them—what idea did he employ them to convey. The decisions are not in harmony on the subject, but a well-defined tendency clearly appears in the more recent cases to uphold the deed if possible, and if necessary to that end to regard it as speaking with colloquial freedom rather than with formal accuracy. . . .

"Applying the reasoning of these cases to the facts here presented we are convinced that the real purpose of Dolan, so far as disclosed by the language of the deed now under considertion, notwithstanding his failure to express it in correct terms, was to vest a title immediately in Otney, reserving only a life-interest in himself; that is to say, the deed should be taken to mean this in the same sense and for the same reasons that such meaning is imputed in the case of the deposit of an ordinary deed under the same circumstances—the words relied upon to change the usual rule do not have that effect." (pp. 313, 315.)

These considerations impel us to hold that title passed to the devisees on the death of their father, the testator, and he merely intended that enjoyment by them should be postponed until his wife and he were both dead. Moreover, his intention and his widow's intention also were literally complied with, and she did enjoy the life estate notwithstanding the failure to include a provision therefor in the testament.

The judgment of the district court is reversed, and the cause remanded with instructions to enter judgment for the defendants.