No. 23,787.

H. H. Ross, *Appellant*, v. Edward E. Ross, *Appellee*, et al.

SYLLABUS BY THE COURT.

1. Will—*Election by Conduct to Take Under Will.* Under the settled rule that in order to constitute an election to take under a will the choice must be made clearly, unequivocally and understandingly, it is held that the record showed on the part of the plaintiff an election by conduct to take under the will of his deceased wife.

2. Same—*Evidence—Findings.* The findings of fact held to be fairly supported by the evidence and to justify the result reached.

3. Same—*Estoppel—Inconsistency.* Estoppel and inconsistency of conduct discussed and distinguished.

Appeal from Rice district court; Daniel A. Banta, judge. Opinion filed June 10, 1922. Affirmed.

*Samuel Jones, Ben Jones,* both of Lyons, and *F. Dumont Smith,* of Hutchinson, for the appellant.

*W. W. Stahl,* of Lyons, *Ira E. Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellee.

The opinion of the court was delivered by

West, J.: This appeal presents the one question whether or not the plaintiff must be held in law to have elected to take under the will of his wife, Allie V. Ross.

The testatrix died in 1913, at Philadelphia, leaving as her heirs the plaintiff and two children, Edward E. Ross and Violet E. Ross. At the time of her death Allie V. Ross owned a half section of land in Rice county, Kansas. She left a will by which she bequeathed all her property to her executors, her two children, in trust, to collect the rents and income and apply them (1) to the payment of taxes and the costs of the repairs and maintenance of the farm, (2) to the payment of all her debts and (3) to the plaintiff during his natural life and the remainder over to the two children. No formal consent or election was ever given or filed by the plaintiff. Afterwards the daughter died, leaving all her property to her brother, Edward E. Ross.

In July, 1920, the plaintiff brought this action in partition, claiming an undivided half of the land. The defendant and his wife set up the will and claimed the remainder in fee. In 1913, Edward

E. Ross received from a lawyer in Philadelphia a letter advising him that the will should be probated in Philadelphia and—

"If probate is delayed longer, it may put upon you the burden of explanation in the event of a contest. As soon as the will is probated, copies should be sent to Mr. Ross and other parties in interest, but we think that there is no reason why a copy of the will should be probated at the present time in Kansas. This would prevent the necessity from [for] any definite action upon the part of your father, and at the same time would preserve the right of all the heirs under the will."

The son testified that he was present when the will was made and that the lawyer who drew it told the father when he read it to him what his "curtesy" rights were under the laws of Kansas and told him under the law of Kansas he was entitled to half the real estate and asked him if he understood that and if the will was satisfactory to him. His father said it was. "He explained to him, 'you are entitled to the income of all the property, in Kansas, for your lifetime.' Father said he was satisfied with that." He testified that he found a note from his father to his wife for $9,800 and it had never been paid to his knowledge and that he had never presented it for payment; that he and his sister had never received any money except a certificate for $300; that there were debts amounting to $1,261.50 which his sister paid and that his father repaid them and $250 which his sister had advanced on a mortgage; that he had never paid or offered anything from the proceeds of the farm to the witness; that after his sister's death he talked to his father and asked him if he was satisfied with the conditions of the will.

"He said he was, only he felt hurt he had not been made one of the executors. He said, 'it is all right, go ahead, we don't want any lawsuit about it.' About a month after that in a conversation he said he did not think he was getting all he was entitled to and said, 'I could take half of the farm if I wanted it, under the laws of Kansas.' I said, 'That way you would get only half of the income. This way you get it all.' He made no further statement at that time that I remember."

Witness said that his father came to Kansas to look after the land and about January, 1920, he heard a conversation between him and witness' sister, and after she told him what she had in her will she said to him:

" 'I have left this house in Philadelphia to Ned and my half of the Kansas farm to him. Isn't that right? You will get all the income all your life, and I think he ought to have the land. Isn't that right. Are you satisfied?' He said he was."

Joseph A. Zile testified that he knew the plaintiff four or five years and once asked him if his farm was for sale and he said it belonged to his children; that he got the proceeds as long as he lived; afterwards when the witness found that the plaintiff had brought a suit he asked him what was the matter and said:

"'I thought the land belonged to your children.' He said, 'Yes,' but he explained about the Kansas law and said, 'I am depending on the Kansas law,' and that's about all he said . . . He told me he was simply renting the farm and it belonged to his children. He said, 'I've just got a life interest and get the proceeds from the farm.'"

Charles Zile testified that the plaintiff told him the land belonged to the boy and girl and that he could not sell it. He got all that came off the farm.

The plaintiff testified among other things that he was not present when the will was made and that it was never read to him; that he never learned that his wife willed the property away until the previous month. He had rented this land before 1913 and had rented it for forty-two years and continued to do so after his wife died. After his wife's death he paid off the mortgage and kept an accurate account of the income; that he had come to Kansas nearly every year since 1907, but denied the conversation referred to and that he had ever admitted that the children owned the land.

The trial court, after hearing all the testimony, made findings of fact very thoroughly covering the entire controversy, and conclusions of law. Among the findings are the following in substance: That the will was withheld from record in Rice county intentionally by the son on the advice of counsel until August 7, 1920; that the plaintiff at no time since the making of the will has ever consented to its provisions "but said H. H. Ross, the plaintiff, has at all times since the making of said will collected said rents and incomes, and from said sums so collected has paid the taxes, costs of repairs and upkeep of the said premises and the insurance upon the property and crops thereon, and has paid the mortgage upon said land and the interest thereon"; that prior to her death the testatrix told the plaintiff that she was going to will the farm to the children and that they were to be executors and he was to receive the income; that shortly after her death he was informed what the Kansas law was touching his rights in the property; that his control and management of the farm and the collection of rents, the payment of taxes, insurance and indebtedness and the discharge of the mortgage together with the expenses of the last sickness and burial of

his wife "has in no manner prejudiced the rights or interests of Edward E. Ross or Violet E. Ross or caused them to alter their position in any manner to their prejudice, and such payments were in accordance with the terms of said will." It was further found that the $9,800 note has never been paid by the plaintiff; that the daughter paid $1,600 expenses of funeral and sickness, which the plaintiff subsequently returned to her out of the rents and profits of the land. At the time of the trial he had received from the land $6,693.33, out of which he had expended $4,461.98, including a note executed to him by his daughter for $457, leaving in his hands as proceeds from the farm $2,688.35; that the plaintiff was in no wise prejudiced by the attitude of his children concerning his management of the estate, neither were they prejudiced or misled by his action in relation thereto.

As conclusions of law the court found that the plaintiff was estopped from claiming any greater interest in the land than that bequeathed to him by the terms of the will and that under its terms he succeeds to all rights of the daughter in and to the land. The plaintiff was decreed to have such rights as were given him by the will, the remainder to go to the son upon the death of the plaintiff.

It is contended that the plaintiff, not having made a statutory election, is entitled to one-half of the land, and decisions of this court are cited in support of the theory that an election must be clear and unequivocal.

The defendants claim an election by conduct. Counsel suggest that before his marriage to his second wife in 1919, the plaintiff's statements indicated an intention to take under the will. They cite *Reville v. Dubach,* 60 Kan. 572, 57 Pac. 522, holding that one who deliberately proceeds as though an election had been made, accepts the benefits of the will and actually takes under it, will not be heard to say no election has been made.

The usual condition in a lawsuit is found here—a sharp conflict between the testimony of the plaintiff and that of the defendants, and direct assertions and denials of expressions and knowledge touching the provisions of the will. But the trial court resolved this conflict in favor of the defendants, and this is conclusive on us. There is left for our consideration the conduct of the plaintiff and its legal effect.

The case has been thoroughly and ably presented on both sides, and in one or both briefs are discussed not only the question of estoppel, but whether estoppel was properly pleaded, whether any

change in status was caused by any act of the plaintiff, whether he came into court with clean hands, whether he was a cotenant with the defendant and his sister, and at what place an election to take under the will should have been made. Aside from the question of estoppel which, under the answer and reply and the way it was treated in the trial, was sufficiently pleaded, the other matters referred to are not necessary to a determination of this case, and therefore will not be discussed or decided.

Taking up the matter of election, it may be said that section 11798, General Statutes of 1915, provides that if the widow shall fail to make an election she shall retain her share of the estate which she would have been entitled to had there been no will, and of course, the same rule applies to a husband. In *Sill v. Sill*, 31 Kan. 248, 1 Pac. 556, it was decided that in order for the acts of the widow to be regarded as an equivalent to an election to take under the will she must act with full knowledge of all circumstances and of her rights and it must appear that she intended by her acts to take under the will, which acts must be plain and unequivocal and be done with the full knowledge of her rights and the condition of the estate. There the widow sent a written election to the probate court by her stepson, but she had not had explained to her the provisions of the will or her rights, and there were other reasons why the circumstances were not sufficient to amount to an election. In *James v. Dunstan*, 38 Kan. 289, 16 Pac. 459, the widow did not make a formal election but expressed her satisfaction with the will when it was made, and, after the death of the testator, declared her intention to take under it and to come in and elect to accept its provisions, but her rights were not explained to her and she was held not to have elected. In *Cook v. Lawson*, 63 Kan. 854, 66 Pac. 1028, it appeared that the husband when drafting his will was requested by the wife to enlarge her temporary estate to a full life estate, which was done to her expressed satisfaction. She was made executrix with another. After her husband's death she took the will to the probate judge's office and made a written proposition for its probate and renounced her right to serve as executrix and asked that her coexecutor be permitted to serve alone, and several times stated to her neighbors that she knew all of the provisions of the will and was satisfied with them and continued to reside on the land for nearly twenty years. The court said:

"All that was lacking satisfactorily to prove an election *in pais* was evi-

dence of the widow's knowledge of her rights under the statute. We do not think, however, that it was necessary to make express proof of that fact. Knowledge on her part was inferable from her acts and from her declaration of satisfaction with the provisions made for her, and from her twenty years' failure to dissent from them. It was fair to infer that during that long period she learned what her rights were under the law." (p. 856.)

In another case the widow was found to have consented to the will and after the husband's death appeared in probate court, and with it sent a petition asking for its probate and stated that it would not be necessary for her to elect to take under the will for she had in writing consented to the will. She afterwards acted as executrix for more than a year and received from the estate $2,000 from the distribution of personal property and had a thorough knowledge of the property of the deceased. It was held that under all these circumstances the discovery that the estate was larger than she supposed afforded no reason for setting aside the consent she had previously given. The trial court found an election by conduct to take under the will, and this was affirmed. (*Pirtle v. Pirtle*, 84 Kan. 782, 115 Pac. 543.) That when a widow fails to make an election the law makes one for her and her failure amounts to an election to take the share she would have taken had her husband died intestate, was held in *Williams v. Campbell*, 85 Kan. 631, 118 Pac. 1074. The court said:

"If appellant, with full knowledge of her rights under the will, accepted benefits and received property provided for her by that instrument she will be estopped to deny that she made an election or to claim the share which a wife takes under the law where the husband dies intestate." (p. 635.)

"Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both. The doctrine, which is purely equitable, and was originally derived from the civil law, finds its most frequent illustration in the case of wills, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." (40 Cyc. 1959.)

Under the findings made by the trial court which the record shows were supported by the evidence, the conclusion of law that the plaintiff should be held to have elected to take under the will is entirely supportable under the rules announced in the foregoing decisions. It may be more proper to regard it as an election by conduct than purely as a matter of estoppel. The finding that neither

party had changed its position or sustained any loss by reason of the action of the other eliminates some of the usual features of estoppel.

But, to use plain terms, with full knowledge the plaintiff for many years acted as if he had chosen to take what the will gave him and his actions in this respect were so significant and so continued that to hold he had not elected would be to convict him of remarkable inconsistency.

Holding, therefore, that the trial court was justified in determining the conflict against the plaintiff and proceeding from this starting point, we conclude that the findings of conduct on his part would, if construed otherwise than as by the trial court, work a remarkable case of inconsistency and that such actions were sufficient proof of an intention to take under the will.

Hence the judgment must be and is affirmed.