No. 38,495

In re Estate of Emil P. Patzner, Deceased. ( FRANCES HICKEL PATZNER, *Appellant,* v. HERBERT DIETS, Administrator, C. T. A. of the Estate of Emil P. Patzner, Deceased, and LOUIS F. PATZNER, *Appellees.*)

(244 P. 2d 1183)

134

Opinion filed
June 7, 1952.

W. H. *Alward,* of Herington, argued the cause, and *John Henry Lewis,* of Hoisington, was with him on the briefs for the appellant.

*Boyce P. Hardman,* of Great Bend, argued the cause, and *Herbert Diets,* of Great Bend, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a widow to set aside her written consent to her husband's will and to permit her to take according to her later election under the law of intestate succession.

Defendants were a brother of the testator, a beneficiary under his will, and the administrator of decedent's estate. The probate court denied the relief sought by the widow and she appealed to the district court. It tried the action *de novo* and affirmed the judgment of the probate court. The district court expressly found the widow's consent to the will was freely, understandingly and intelligently made. That finding is the principal ground of the widow's appeal to this court.

In view of certain contentions it appears well, before making a general statement of the facts necessary for a proper review, to restate the long established rule that on appellate review this court is not concerned with evidence which may be contrary to the finding of the trial court but only with evidence which supports, or tends to support, such finding. The rule simply means this court will not disturb a material fact resolved by a trial court on conflicting evidence. We, therefore, do not deem it necessary to encumber the opinion with a lengthy narrative of conflicting evidence. Relative to the testimony of appellant, which was highly conflicting on direct and cross-examination, we shall include in our general statement only such portions thereof as support the trial court's finding. From the foregoing statements, however, it must not be inferred we are unmindful of appellant's contention the testimony was insufficient in certain particulars to establish the widow freely, understandingly and intelligently consented to the will. That subject will receive separate attention later.

We shall refer to the testator, Emil P. Patzner, as Emil, to his widow as Frances and to Emil's brother, Louis F. Patzner, one of the appellees, as Louis.

Emil's parents were farmers. They died intestate. His mother died in 1931 and his father in 1932. They had four children, Emil,

Louis, William and one daughter, Minnie Ehly. William had died in 1929. He had a son, Joseph. At the time of their father's death Emil was fifty and Louis forty-nine years of age. The estates of the parents were administered and under settlement negotiations by the heirs Emil and Louis became the owners of the property of their parents in equal undivided one-half shares. Frances was a German girl with a third-grade education. She was a domestic or hired maid of Emil's parents for three or four years before their deaths. Emil had probably a sixth- or seventh-grade education, having attended school only when the weather was bad and he was unable to work. Emil and Louis remained on the farm with their parents and helped their father do the farm work and acquire several pieces of land. The father's total estate was appraised at $31,600. Emil and Louis continued to live on the home farm after the death of their parents and Frances continued to keep house for them. In view of the fact Emil and Louis had worked together continuously, were congenial and in a large measure responsible for the property their parents had acquired each made a will devising and bequeathing his property to the other.

On October 13, 1938, Emil and Frances were married. He was fifty-six and she was fifty years of age. They and Louis continued to live together on the home farm. They farmed some of their lands and leased some of them to others. In 1937 there was development for oil on the home farm and on their land across the road from the home place. Title to lands acquired from the estate of their parents was settled among the heirs and on January 18, 1939, the will and consent in question were executed. They were prepared at Emil's request by Clyde Allphin, an attorney now deceased, who was also one of the witnesses to the will. Allphin was a personal friend of both Emil and Frances. He died before this action was tried.

The parties stipulated as follows:

"We desire to stipulate that *at the time of the execution of this will and consent* that Emil Patzner owned an undivided half interest in land inherited from his father which is described as the southeast quarter of Section 26, Township 17, Range 11, Barton County, Kansas, and was appraised in the Wenzel Patzner estate at $10,400.00, which date of appraisal was the 25th day of March, 1932; that from the same estate he had a half interest in the northwest quarter of Section 30-17-10, Ellsworth County, appraised at $8,000; the southwest quarter of Section 30, Township 17, Range 10, Ellsworth County, appraised at $4,400; that the total of property appraised in the estate of Wenzel Patzner was $31,600.

"It is further stipulated that Emil Patzner owned an undivided one-half interest in that property.

"It is further stipulated and agreed that he owned an undivided half interest in the northeast quarter and the north fifty-three acres of the northwest quarter of Section 1, Township 17, Range 16, Rush County, Kansas; that it was purchased July 20, 1937, for a consideration determined by the revenue stamps of $9,000.00.

"That the certificate of the Security Abstract and Title Company of Wichita, Kansas, covering five described properties and photostatic copies of the deed record of Sedgwick County, Kansas, are true and correct as to the ownership of property by Emil P. Patzner in Sedgwick County, Kansas. That he owned an undivided half interest in all of these properties; that the consideration for the north half of the southeast quarter of Section 31-26-3 is $6,400; that the consideration for the south half of the southeast quarter and the east half of the east half of the southwest quarter of Section 31 is $4,600; that the consideration for the southeast quarter of Section 19, Township 26, Range 3 is $15,000. It is further stipulated that the purchaser at the time of the purchase on the 10th day of December, 1936, assumed a mortgage dated August 3, 1936, for $6,200 as a part of the consideration, a total of $15,000; that is on the southeast quarter of Section 19, Township 26, Range 3.

"The Court: What county?

"Mr. Alward: Sedgwick County.

"That the east half of the southeast quarter of Section 3, Township 27, Range 3, Sedgwick County, Kansas, the deed being dated the 24th of January, 1938, shows one dollar, but eight dollars of internal revenue stamps cancelled, which indicates an agreed considertion of $8,000; and that the deeds to Lots 1 and 2 and the south half of the northeast quarter, Lots 3 and 4 and the south half of the northwest quarter, all in Section 3, Township 27, south, Range 3, Sedgwick County, Kansas, dated the 11th day of February, 1938, indicates a total consideration of $26,500; and that this certificate and these photostatic copies of deeds are to be accepted as indicative of the cost of said property." ( Our italics. )

The parties further stipulated:

"It is stipulated that the cost value of the land in *Sedgwick and Rush Counties,* to Emil and Louis Patzner, is to be accepted as its value as of the 18th day of January, 1939; in accordance to the purchase price shown on the deeds which are in evidence by stipulation. It is further stipulated that one-half of the property was owned by Emil Patzner." ( Our italics. )

On the basis of the stipulations Emil's one-half interest in these properties, exclusive of the oil, at the time the will was executed amounted to $47,550. It has been observed that under the second stipulation the parties did not agree the appraised value of the land in Barton and Ellsworth counties, which had been a part of their father's estate, was conclusive. Some evidence was introduced tending to show these lands were worth somewhat more than indicated in paragraph 1 of the first stipulation. It was within the province of

the trial court to consider and weigh all the testimony respecting the value of those properties. Emil's will was quite short. The pertinent paragraphs thereof read:

"*Second:* I give and bequeath unto my beloved wife, Frances Hickel Patzner, all of the furniture, household equipment, dishes, silverware, china, bedding and other personal effects acquired by either or both of us as wedding or Christmas gifts or owned by my said wife at the date of our marriage on October 13, 1938, and any and all other furniture, household equipment, dishes, silverware, china, bedding or personal effects purchased or acquired by my said wife and/or myself, subsequent to said October 13, 1938, date.

"*Third:* I give and bequeath to my beloved wife, in addition to the provisions made in paragraph 'Second' above, the sum of Fifty Thousand Dollars ( $50,-000.00) as her full, complete and entire share of my estate. I should like that this money be paid to her within Five (5) years after my death, as in the judgment of my executor, hereinafter named, it may be done and accomplished; giving unto said executor the right and directing that he so do, to make payments monthly or quarterly and in such installment amounts as he may wish and desire and can do, and with full right and authority to mortgage or sell any part or portion of my estate to make such payments and with full right and power to make deeds or other instruments of transfer or conveyance for such purpose as I could myself if personally present and so acting.

"*Fourth:* All of the rest, residue and remainder of all my property, real, personal and mixed, including lands, moneys, notes, mortgages, accounts, farming machinery and equipment, livestock, chickens, grain, growing crops, oil and gas royalties, oil and/or gas in production, oil and/or gas leases, and all other property of every kind or character and wherever located or situated, including also furniture, household equipment, dishes, silverware, china, bedding, bric-a-brac, and personal effects, acquired or obtained from our dear parents, Mary and Wenzel Patzner, by Louis F. Patzner and myself, and/or purchased, acquired and/or obtained by us since their decease and prior to October 13, 1938, (the date of my marriage to Frances Hickel), I do give, devise and bequeath unto my dear brother, Louis F. Patzner, to be his absolutely and forever, in fee simple and full title."

The consent to the will reads:

"CONSENT TO WILL

"The undersigned, Mrs. Frances Hickel Patzner, the wife of Emil P. Patzner, the above and within named Testator, having read the foregoing will of said Emil P. Patzner and being well informed of the contents thereof and the provisions made for her therein, hereby consents to the provisions contained therein for her benefit and expressly consents that the said Emil P. Patzner may bequeath and devise away from her more than one-half (½) of his property."

The will nominated Louis as executor but he declined to serve and the appellee, Herbert Diets, was appointed administrator of Emil's estate. Edward Opie, president of the First National Bank of Great Bend was the only living witness to the will and consent.

Was there evidence to support the trial court's finding Frances understood the terms of the will and her rights under the law? Her testimony on direct examination in the district court unlike her testimony in the probate court, repudiated the admissions contained in her written consent. Edward Opie was called as a witness by Frances. He testified Allphin's office was in the First National Bank building and Allphin had frequently called him to witness wills; Allphin was an exceedingly careful lawyer and always made certain people understood wills before they were permitted to sign them.

Opie's testimony was directly contrary to the testimony of Frances on her direct examination relative to what transpired at the signing of the will and consent. He denied the testimony of Frances to the effect she had told Allphin she did not understand the will and that she had told Allphin she desired to discuss the matter with her sister and brother before signing. Other portions of Opie's testimony, which were also in conflict with that given by Frances on her direct examination, in substance, were: Allphin read the will to Frances paragraph by paragraph and at the end of each paragraph inquired whether she understood it and her answers were all in the affirmative.

On cross-examination Frances admitted much of her material testimony on direct examination was contrary to that given by her in the probate court. She finally admitted, although reluctantly, her answers given in the probate court were true. These admissions included the following facts: The will had been read to her paragraph by paragraph by Allphin and her answers were that she understood each paragraph; she was advised by Allphin and knew that a wife was entitled to one half of her husband's property under the law; she understood what part of Emil's property she was to receive and what part thereof Louis was to receive; she understood these things at the time she consented to the will.

In the light of the record we have no hesitancy in concluding there was evidence to support a finding Frances understood the terms of the will, her rights under the law of intestate succession and that she agreed Emil might devise and bequeath to others more than one half of his property.

We now reach the next contention. It is claimed the evidence was insufficient to show Frances knew the value of Emil's property and, therefore, her consent was not intelligently given. In this connection we are reminded nothing was said about the value of oil production at the time the will and consent were filed. This is true

but neither do we find any other property interests were mentioned at that particular time. Emil's lips were sealed and what, if anything, he may have told Frances concerning that subject is not disclosed. In view of her shifting testimony and her final admissions on cross-examination that her original testimony in the probate court, previously mentioned, was truthful the district court may have concluded Frances was withholding information she had received from Emil concerning his financial worth. It should be stated there was no contention her consent was obtained through fraud, misrepresentation, undue influence or in bad faith on Emil's part. In fact, Frances admitted Emil had always been good to her and had given her whatever she wanted. The real substance of the complaint is the bequest of $50,000 and other personalty described in the will was disproportionate to the total value of Emil's property, which it is claimed Frances did not know.

Counsel for Frances stress the value of Emil's estate at his death and the value an engineer for an oil company had placed on the oil reserves in 1937 and again thereafter in his preparation to testify as plaintiff's witness in this action. Emil died April 28, 1949. That was over ten years after the will and consent were executed. Manifestly we are not concerned with the appraised value of Emil's estate at his death in determining the fairness of the will and consent at the time the latter were executed, some ten years before and under wholly different and unknown future developments. Nor are we concerned with the value an engineer of an oil company may have placed on the oil reserves in 1937 when such appraisal was confidential information for his oil company and without evidence Emil was ever advised thereof. Emil was a farmer and not an oil man or a mining engineer. There is not the remotest evidence Emil had any knowledge concerning the value of the oil reserves and no testimony of his attempt to overreach Frances in any manner. In this connection it is worthy to note that about two months before Emil's death he purchased $50,000 worth of U. S. government savings bonds for Frances. These she received in addition to the provisions of the will. The bonds were delivered to her by the administrator. A gift of such proportions, or a much smaller one, would have been wholly impossible under Emil's financial status at the time the will was executed, as he possessed very little cash at that time.

What we are obliged to consider is Emil's financial worth at the

time Frances consented to his will and whether she had a reasonably fair general understanding of his property and its worth rather than a detailed knowledge thereof. It would seem, and the trial court had a right to believe, she possessed more general knowledge concerning his properties than might appear on the surface. Among the things she admitted knowing at the time she consented to the will were the following: What lands Emil and Louis owned together; what land they farmed together and what land they leased to others; that oil was being produced on the home place and on their land across the road therefrom; the approximate number of producing wells; that Emil's and Louis's joint income was from farming operations and oil production; with that income accumulated during the past years they had purchased land in Rush and Sedgwick counties; that in 1938 and for some years thereafter oil production had been reduced and the prices were slashed; (the will was executed in January, 1939) after the Rush and Sedgwick county lands had been purchased Emil had very little cash available; these lands were purchased during a period of approximately a year and a half before the will was executed; she understood what property she and Louis were to receive under the terms of the will.

There is other evidence Frances must also have been kept advised concerning Emil's income after the will had been executed. She admitted knowing there had been government restrictions on the production of oil and price regulations which were later removed during the war years and that the oil income had about doubled between 1942 and 1946. Surely it cannot be contended seriously that in 1939 Emil knew, or had reason to believe, this nation would become involved in a war resulting in such increased income. Frances admitted it was only after this increase in Emil's financial worth that she became dissatisfied with the will. She said she did not advise Emil of her dissatisfaction. In any event he gave her another $50,000 in the form of government bonds.

G. S. 1949, 59-602 expressly permits one spouse to consent to the other willing away more than one-half of his or her property. The question is whether Frances is bound by her written consent to the will executed in conformity with the statute. The form of such an instrument or the precise words employed therein are unimportant. The question is whether Frances agreed to accept the provision made for her and agreed to the disposition of other property as indicated in the will. (*Jack v. Hooker,* 71 Kan. 652, 81 Pac. 203;

*Weisner v. Weisner,* 89 Kan. 352, 355, 131 Pac. 608; *Moore v. Samuelson,* 107 Kan. 744, 748, 193 Pac. 369; *In re Estate of Ellis,* 168 Kan. 11, 28, 210 P. 2d 417.) Her written consent clearly discloses she agreed to accept the provisions of the will. The general rule is that whether an acceptance of the provisions of a will is binding depends upon it being freely, knowingly and understandingly, or intelligently made. (*In re Estate of Ellis,* supra, and cases therein cited.)

It is not necessary that a consenting party be familiar with all the details of a testator's property but such party should have a general knowledge and understanding of the testator's property. Whether a consent, as it pertains to the disposition of property, is freely and understandingly made must be determined on the basis of the property and its value at the time the consent is executed and not at a later time and under entirely different circumstances and unexpectedly increased worth. (*Pirtle v. Pirtle,* 84 Kan. 782, 115 Pac. 543; *In re Estate of Ellis,* supra, p. 28.) It accordingly has been held that where a wife has a general understanding of her husband's property at the time she freely consents to take under his will and knows her rights under the law her acceptance of its terms is binding and she may not later repudiate it because she subsequently discovers his estate is larger than she anticipated. (*Pirtle v. Pirtle,* supra; *Weisner v. Weisner,* supra; *Chilson v. Rogers,* 91 Kan. 426, 429, 137 Pac. 936; *In re Estate of Ellis,* supra, p. 28.) Manifestly this is doubly true where the value of a testator's estate is subsequently increased by unexpected good fortune, as here.

It early was held where consent to a will has been given in accordance with the formalities required by the statute ignorance or undue influence should clearly appear before such instrument is declared invalid. (*Buchanan v. Gibbs,* 26 Kan. 277.) In that opinion it not only was said the alleged ignorance or undue influence should clearly appear but it was said it should appear "generally by something more than the mere testimony of the party interested and signing. . . ." (p. 279.) In any event trial courts are justified and required to take into account all the facts and circumstances in determining whether a consent is invalid or binding.

In the instant case the district court, as the probate court, expressly found the consent was freely, understandingly and intelligently given and that it was a valid and binding consent. The general rule that findings of the district court supported by competent

evidence will not be disturbed on appeal applies in cases involving consent to wills. (*Pirtle v. Pirtle,* supra; *Weisner v. Weisner,* supra; *Menke v. Duwe et al.,* 117 Kan. 207, 209, 230 Pac. 1065.) Another rule of equal force is that a trial court has not only the right but the duty to determine what weight it will accord to the testimony of witnesses and that, of course, includes the testimony of the party seeking to nullify a written consent to a will. We think we would not be justified in reversing the findings and judgment of the district court.

The judgment is affirmed.