SAMUEL M. SILL, et al., v. REBECCA SILL.

1. PETITION—*Defects Cured by Answer.* Where a petition is defective for want of a material averment, but such averment is supplied by the answer, and is not inconsistent with the averments of the petition, a demurrer filed to the answer and properly overruled will not be carried back and sustained as to the petition.

2. CONVEYANCES, *Not to be Explained by Parol Evidence; Will.* A husband and wife, residents of this state, exchanged conveyances of real estate with each other, whereby the wife had absolute title to a house and two lots in Illinois, and the husband the title of the property in Kansas, except there was reserved to the wife a life estate therein. A year afterward the husband executed a will, bequeathing to the wife a life estate only in the homestead and other property in Kansas. These conveyances did not refer to the will or any of its provisions, and no fraud or mistake was charged in their execution. *Held,* That after the death of the husband these conveyances could not be explained by parol evidence as a consent in writing to the will under § 35, ch. 117, Comp. Laws of 1879.

3. WILL—*Consent in Writing; Quære.* Under the provisions of § 35, ch. 117, Comp. Laws of 1879, a consent in writing, given after the will is probated, is not valid unless it is in terms an election to take under the will. *Quære?* Must not the consent under said § 35 be given in the life-time of the devisor?

4. WIDOW, *No Election to Take Under Will.* Where the widow does not appear in person in the probate court to take an election under the will, but instead thereof sends by a step-son a writing signed by her for deposit in the probate court, consenting to and accepting the provisions of the will, but at the time the writing is deposited with the court the court has not explained to her the provisions of the will, her rights under it, or her rights under the law, and she is induced to sign the writing upon the statements of her step-children that she would not have anything if she did not take under the will, *held,* that thereby there was neither a literal nor a substantial compliance with the provisions of the statute concerning the election of the widow to take under the will.

5. ELECTION, *to Take Under Will—Acts Essential.* In order that the acts of the widow shall be regarded as equivalent to an election to take under the will, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended by her acts to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence, without a deliberate and intelligent choice, will not be an election. ( *Milliken v. Weliver,* 37 Ohio St. 460.)

*Error from Marion District Court.*

ACTION by *Rebecca Sill,* widow of Daniel Sill, against *Samuel M. Sill* and others, to have her late husband's will set aside and declared void as to her. Trial at the May Term, 1882, and finding and judgment for plaintiff. The defendants bring this judgment here for review. The opinion states the facts.

*L. B. & J. M. Kellogg,* and *L. F. Keller,* for plaintiffs in error.

*Doster & Bogle,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Rebecca Sill, widow of Daniel Sill, deceased, to have the will of her late husband set aside and declared void as to her, for the reason, as she alleged, that she never consented in writing or otherwise to the will, and never made any election under the statute to take thereunder. The case was tried by the court, a jury being waived. The court found generally for the plaintiff below, and rendered judgment in her favor. The plaintiffs in error, who are the executors and legatees under the will, complain of the judgment.

I. The answer filed to the petition admitted that Rebecca Sill was the widow of Daniel Sill, deceased; that the said Daniel Sill made his last will and testament on the 19th day of June, 1880; that he executed a codicil thereto on July 15, 1880; that the will was probated on January 17, 1881; that George Sill and John H. Sill were appointed by the probate court executors of the will; that they qualified as such, and entered upon the discharge of their duties.

The answer alleged, as a second defense, that at the time of the execution of the will and the codicil thereto, Rebecca Sill was present and consented orally to the will in the presence of the attesting witnesses and others; and that frequently after the execution of the will, both prior to and after the

death of Daniel Sill, she expressed herself as satisfied with the provision made for her in the will.

The answer further alleged, as a third defense, *inter alia*, that on or about January 29, 1881, and after the probate of the will, Rebecca Sill being unwell, and it being inconvenient for her to go to the county seat of Marion county, where the will was probated, procured John H. Sill, her step-son, to go to the county seat and have written out for her to sign a consent in writing to the provisions of the will and an acceptance of the will; that pursuant to her request he had a paper prepared for her to sign, and thereafter, on the 31st day of January, 1881, in the presence of several persons, she signed voluntarily the same and had one Justice Evans attest it as a witness; that prior to signing this writing, various persons explained to her the provisions of the will and her rights under it, and also her rights under the statute, in the event of her refusal to take under the will; that on February 4, 1881, at her request, John H. Sill filed the writing so signed and witnessed, with the probate judge of Marion county; that by signing and filing such written instrument, Rebecca Sill had consented to the will and elected to take under the will.

The answer further set forth that after such alleged consent and election, Rebecca Sill took and received all the property bequeathed to her by the will, and has ever since been in the actual possession and enjoyment of the same.

To the second and third defenses contained in the answer, the plaintiff below filed a general demurrer. This was overruled, and at the same time the court denied the request of the defendants below to carry the demurrer back, and sustain it as against the petition. It is now urged that this request should have been granted, upon the ground that the petition was fatally defective. In support of this, it is said that the petition "contained no hint or suggestion that defendants below had denied the plaintiff anything; nor that they had disputed any of her property rights as the widow of Daniel Sill; nor that they had interfered in any way, or had

threatened to interfere with her retention and enjoyment of any portion of the property to which she was entitled." If the petition was defective for want of any material averment, we think such defect was supplied by the answer. It is clearly apparent that the answer set up that Rebecca Sill had consented to the will, and had elected to take thereunder; that the executors and legatees claimed the property under the will, and alleged a right thereto adversely to the widow. (*Irwin v. Paulett*, 1 Kas. 418.)

II. On July 3, 1879, Rebecca Sill executed to N. F. Allspaugh a conveyance of all her claim in her husband's property, real and personal, and her interest in her property in McLean county, Illinois, which consisted of lots 10 and 11, in block 1, in the town of Normal—all to take effect after her death. On the same day N. F. Allspaugh and wife executed to Daniel Sill a conveyance of all the property, real and personal, both in Kansas and Illinois, conveyed to N. F. Allspaugh by Rebecca Sill; on the same day Daniel Sill executed to N. F. Allspaugh his conveyance of said lots 10 and 11, in block 1, in Normal, McLean county, Illinois; and on the same day N. F. Allspaugh conveyed said lots to Rebecca Sill.

It is contended that these conveyances taken together, and as explained by the testimony of N. F. Allspaugh and Rebecca Sill, constituted a consent in writing founded upon a valuable consideration, that Daniel Sill might dispose of more than one-half of his property by will to other persons than his wife; and that as these conveyances were executed in the presence of two witnesses, the requirements of the statute were complied with. (Comp. Laws of 1879, ch. 117, § 35.) All of these conveyances were made nearly a year before the execution of the will, and do not refer to the will or any of its provisions. We cannot hold that they evidence any consent under said § 35. They speak for themselves; they were executed voluntarily by the parties; no fraud or mistake is charged against them, and they cannot be ex-

plained by parol evidence to be a consent in writing to the will subsequently executed.

III. It is further contended that the writing signed by Rebecca Sill on January 31, 1881, and presented to the probate court on February 4, 1881, was both a consent to the will and also an election by her to take under the will. It is doubtful whether a consent in writing to a will under the provisions of said § 35, is of any validity unless made in the lifetime of the party executing the will. This section reads:

"No man while married shall bequeath away from his wife more than one-half of his property; nor shall any woman while married bequeath away from her husband more than one-half of her property. But either may consent, in writing, executed in the presence of two witnesses, that the other may bequeath more than one-half of his or her property from the one so signing."

Even however if the consent may be given after death, we think it cannot, in the nature of things, be given after the will is probated. Thereafter the sections of the statute concerning an election under the will must control. Hence, the paper deposited with the probate court cannot be regarded as a consent in writing to the will under said § 35. If there was not a consent in writing, was there an election under the will? The sections of ch. 117, Comp. Laws of 1879, concerning the election of a widow, are as follows:

"SEC. 41. If any provision be made for a widow in the will of her husband, and she shall not have consented thereto in writing, it shall be the duty of the probate court, forthwith after the probate of such will, to issue a citation to said widow to appear and make her election whether she will accept such provision, or take what she is entitled to under the provisions of the law concerning descents and distributions, and said election shall be made within thirty days after the service of the citation aforesaid; but she shall not be entitled to both.

"SEC. 42. The election of the widow to take under the will shall be made by her in person in the probate court of the proper county, except as hereinafter provided; and on the application by her to take under the will, it shall be the duty of the court to explain to her the provisions of the will, her

rights under it, and also her rights under the law, in the event of her refusal to take under the will. The election of the widow to take under the will shall be entered upon the minutes of the court; and if the widow shall fail to make such election, she shall retain her share of the real and personal estate of her husband as she would be entitled to by law, in case her husband had died intestate. If she elects to take under the will, she shall not be entitled to the provisions of the law for her benefit, but shall take under the will alone.

"SEC. 43. If the widow of the testator shall be unable to appear in court by reason of ill-health, or is not a resident of the county in which said election is required to be made, it shall be the duty of the probate court, on an application made in her behalf, to issue a commission with a copy of the will annexed thereto, directed to any suitable person to take the election of said widow, to accept the provision of said will, in lieu of the provision made for her by law; and it shall be the duty of the court in said commission to direct such person to explain to said widow her rights under the will and by law."

It is conceded that the probate judge issued no citation for the widow to appear and make her election; that the widow did not appear in person in the probate court of Marion county to make an election; that at the time of the deposit of the writing with the probate court on February 4, 1881, the court had not explained to the widow the provisions of the will, her rights under it, and her rights under the law in the event of her refusal to take under the will. It is further conceded that no election of the widow to take under the will was entered upon the minutes of the probate court; but on the other hand, soon after the paper signed by her was presented to the court, it was lost or mislaid. It further appears that the probate court issued no commission directed to any person to take the election of the widow, to accept the provisions of the will in lieu of the provisions made for her by law. Therefore there was no literal compliance with the provisions of the statute concerning elections; nevertheless it is urged that there was a substantial following of the statute. In support of this view, it is said by counsel that—

"The election of the widow was reduced to writing; that it was full and ample in all its terms; that it was voluntarily

signed by her after full consideration; that it was deposited and filed in the office of the probate judge.of the proper county; that she afterward came in person to the probate judge; that he explained her rights under the law, and under the will; that she made no move to withdraw the written election; that she expressed no dissent therefrom; that both she and the probate judge understood at the time that she had made her election and acceptance of the will; and that the probate judge so certified under the seal of his court."

While there was some evidence tending to prove these statements, yet there was other evidence directly contradictory. The court below heard all the evidence, saw the witnesses who uttered it, was the judge of the credibility of the witnesses, and of the weight of the testimony, and therefore we cannot disturb the general finding. We cannot assume that the paper deposited with the probate court was voluntarily signed by the widow after full consideration, because she testified that "it was brought to her already prepared, by her step-son, John Sill; that there were present when she signed it, Frank Allspaugh, John Sill, and Alexander Sill," all of whom were interested in having her elect to take under the will; that "the paper was read to her by Justice Evans; that this was not long after her husband's death, and she was much troubled and harassed; that when she signed it, she was under the impression that she had only sixty days' time to accept or reject it; that her son-in-law, Frank Allspaugh, told her just before signing it, 'that he thought it would be best for her to accept the will, as it would make less trouble;' that John Sill then asked her 'what she thought about accepting the will;' she answered 'I don't know;' then he said 'I don't think you will have any show to get anything if you do not accept the will;' he said 'We can sell every bushel of corn, every bushel of wheat, every hoof of cattle, every hog, your horse and buggy, stop the rent for two years, take the money and law you with it. How would you like that? Where will you get money to law with?—and then there will be seven to one and we will all fight;' he said 'you have only got two chances; you can take

under the will, or under the law. You can have your choice, and you can accept either one you please. We can turn you out of house and home, and I do not think you will have anything if you do not take under the will.'"

There was evidence that the widow expressed herself at times as satisfied with the will, but she testified that her reason for so doing was "to avoid trouble, as she did not know she could get anything else." After the paper was deposited with the probate judge she called at his house and stayed a couple of hours. The probate judge testified that "she told him, when the paper was presented and explained to her, she hesitated, and did not know just what to do; that she did not know what was really her interest to do; that she had never been entirely satisfied with the will; that she would like his advice in regard to it;" that he said to her, "It would be better to accept under the will, and avoid trouble; that if she did not do so, in all probability she would have a law suit, and it would be an' expense to be incumbered with a suit." The probate judge further testified, that at the time, he was of the opinion the acceptance left with him was not valid, and "that he advised her that it would not stand;" "that she did not say to him in so many words, or in any kind of words, that she had accepted the provisions of the will." When Mrs. Sill was asked if she ever requested the probate judge to give up the paper deposited with him, she answered "she did not, because the probate judge said to her that it was lost."

Upon these statements and others testified to by the witnesses it is apparent that the executors and legatees under the will were anxious that Mrs. Sill should elect to take under the will; that her sister and other own relatives advised her to reject the will; that she was in great doubt what course to pursue; but it cannot be considered that she in any manner substantially complied with the provisions of the statute to elect to take under the will.

IV. Finally, it is claimed that the widow is estopped from denying an election under the law because she took possession

of the personal property bequeathed to her by the will and has also had possession of the real estate. Further, that she has sold the property at Normal, Illinois, and appropriated to her use the proceeds. Daniel Sill died early in January, 1881. His will was probated on January 17, 1881. This action was commenced on the 30th of May, 1881, a little over four months after the probate of the will. About the only personal property she received which she would not be entitled to under the statute was a buggy; but it does not appear that she sold or disposed of it. There is a conflict in the evidence about the sale of the Illinois property. Mrs. Sill testified on the trial that she was willing to sell it for $500. One witness testified that "she informed him she had sold it," but it appears from the conveyances that this property was her own, regardless of the will, and therefore if she had made a sale of it, it was not any acceptance of or acquiescence in the terms of the will. Considered in any light, all the acts charged against her do not constitute such an election in fact to take under the will as estops her from claiming under the statute. *In Milliken v. Weliver,* 37 Ohio St. 460, the law is thus declared:

"In order that acts of a widow shall be regarded as equivalent to an election to waive dower, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended by her acts to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence, without a deliberate and intelligent choice, will not be an election."

The judgment of the district court must be affirmed.

All the Justices concurring.