SALENTINE, Respondent, vs. MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEW JERSEY, Appellant.

*April 10 — May 5, 1891.*

*Life insurance: Condition as to election of amount to be paid in case of suicide.*

Under a condition in a life policy that it shall be void in case the assured shall die by his own hand; but if it be shown that he was at the time "insane, the company will pay the sum insured, or refund the premiums actually received, with interest thereon, according to its judgment of the equities of the case," the company is entitled to a reasonable time in which to become fully informed of the

Salentine vs. Mutual Benefit Life Ins. Co.

facts of the case before making its election as to which amount it will pay, and is not limited to the sixty days in which payment is ordinarily to be made. A few days over three months is not an unreasonable time for that purpose.

APPEAL from the Superior Court of *Milwaukee* County. The case is stated in the opinion.

The defendant appeals from a judgment in favor of the plaintiff for the amount of premiums paid on one policy and the amount insured by the other policy, with interest.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

For the respondent there was a brief by *E. P. Smith* and *Rogers & Mann*, and oral argument by *E. P. Smith*. They argued that by the terms of the second policy the company was bound to pay, either the full amount insured, or the amount of premiums received by it, within sixty days after notice and proofs of death, and on notice that the death was by suicide, it was bound to make its election and give notice thereof. *Stewart v. Donnelly*, 4 Yerg. (Tenn.), 177; *Gillman v. Moore*, 14 Vt. 457; *Plowman v. Riddell*, 7 Ala. 775; *Trowbridge v. Halcomb*, 4 Ohio St. 38; *Heywood v. Heywood*, 42 Me. 229; *Miller v. McClain*, 10 Yerg. (Tenn.), 245; 1 Addison on Cont. sec. 320; *Irish v. Dean*, 39 Wis. 562; *Voechting v. Grau*, 55 id. 317.

ORTON, J.  This action is to recover the insurance on two life insurance policies given by the appellant company to Katherine Salentine, the respondent, and wife of Peter Salentine, on his life,— the first one dated the 19th day of September, 1881, and numbered 105,844; and the other one dated the 20th day of September, 1883, and numbered 115,218; the first of $2,000, and the other of $3,000.

The first of the above policies had the following conditions: "That in case he should die by his own hand, etc., this policy shall be void, null, and of no effect, except that in

·case he shall die by his own hand *while insane* the amount to be paid by the company on this policy shall be the amount of the premiums actually paid thereon, with interest." Peter Salentine, whose life was insured, died by his own hand on the 6th day of January, 1884, and notice thereof was given to the company on the 28th day of the same month. About this policy there is no contest, and the plaintiff was entitled to and obtained judgment for the premiums paid thereon and interest.

The second policy had the following conditions: "If he [the insured] shall die by his own hand, this policy shall be void. If, however, it shall be shown that the insured at the time of taking his life *was insane*, the company will pay the sum insured, or refund the premiums actually received, with interest thereon, according to its judgment of the equities of the case. This option is distinctly reserved by the company, and is made a part of this contract." The company stipulated in the policy to pay or cause to be paid the sum insured, at their office at the city of Newark, to the said assured, sixty days after due notice and satisfactory proof of the death of the assured.

The court found that the first notice given to the plaintiff of the election of the company to pay only by refunding the premiums was on the 5th day of May, 1884. The sixty days after notice and proofs of death expired on the 28th day of March, 1884. The only proofs of the death of Peter Salentine by his own hand, while insane, was a certified copy of the coroner's inquest, without any of the evidence taken therein. There was no evidence that the plaintiff ever made an election to take the insurance instead of the premiums and interest thereon, until after the notice of the company that it elected to pay only by refunding the premiums had been received by her.

The court held that the plaintiff was entitled to recover the insurance, on the ground that the company failed to

give the plaintiff notice of its election to pay only the premiums within the sixty days after receiving the notice and proofs of death. On this appeal this is the only question, the learned counsel of the appellant contending that the company made its election in proper time to limit the plaintiff to a recovery only of the premiums and interest thereon.

The language of this condition is peculiar. The election to "pay the sum insured or refund the premiums" is to be made by the company "according to its judgment of the equities of the case." The learned judge of the superior court seems to have limited the equities of the case to the amount of the premiums paid. But there may be equities in such a case, arising from the circumstances of the death of the person whose life is insured, such as his situation in life, and the causes of his unfortunate mental condition, which might naturally appeal to sympathy and humane feeling, and arising also from the circumstances in which the wife and family had been left by this terrible calamity. To give to the beneficiary of this insurance what in pure justice and fairness she ought to have under the circumstances is a correct definition of equity. It depends upon the consideration of all the circumstances of the case. I speak of this because it is claimed that all the company needed to be informed of to form a judgment of the equities of the case was the death of the insured by his own hand while insane, and the amount of the premiums paid, and that, therefore, but a short time was necessary for the company to make and give notice of such election. The learned superior court held that the time in which notice of the election should be given was the sixty days after the notice and proofs of death. The sixty days mentioned in the policy has not the remotest reference to the time in which such an election should be made. If such notice ought to be governed by any rule, it should be reasonable under the

circumstances.   "In the absence of any statutory or con-
tract provision, the time in which the right of election must
be exercised is not limited, except there must not be such
unreasonable delay as to injure rights acquired by others."
*McCracken v. Finley*, Sneed, Dec. (Ky.), 195; *Cooper v.
Cooper*, 77 Va. 198; *Tibbits v. Tibbits*, 19 Ves. 663.

The election provided for in this policy is different from
any that is considered in the cases cited in the brief of the
learned counsel of the respondent, or any that is usually
found in reported cases, in one respect, and that is that the
person to be notified of the election cannot be injured by
delay, if notice of the election is given at any time before
suit, nor, indeed, if given after that, in time for judgment,
except, perhaps, in disappointing an expectation.   The
plaintiff could acquire no rights which might be injured by
the delay.   In most of the cases the parties are reversed,
and the obligee and not the obligor, and the promisee and
not the promisor, is to make the election which affects the
rights of the other party.   It would seem that the other
party ought to be in such condition that his rights would
be injured by the delay to complain of it.   The plaintiff, by
the policy itself, was entitled to nothing, as the policy was
void.  By the condition, however, she is entitled to the in-
surance or the premiums and interest thereon — one or the
other — at the option or choice of the company.   She cannot
know which she is to receive until such election by the com-
pany is made, and that is all the possible consequence of
the delay.   So essential is it that the other party must have
*rights* to be affected by the election that it has been often
held "that an election may be revoked where the rights of
others are not affected by it."   *Evans' Appeal*, 51 Conn.
435; *Dabney v. Bailey*, 42 Ga. 521; *Sill v. Sill*, 31 Kas.
248; *Adsit v. Adsit*, 2 Johns. Ch. 448; *Elbert v. O'Neil*,
102 Pa. St. 302; *Dillon v. Parker*, 1 Swanst. 359.

But notwithstanding this election differs from those most

common, by the absence of any rights to be injured by the delay to make it, yet it is in the form of one kind of election mentioned in the books; and we cannot say that it ought not to be made, and notice thereof given within a reasonable time. "Election presupposes a plurality of gifts or rights, with an intention, express or implied, of the party who has the right to control one or both, that one should be a substitute for the other." 1 Swanst. 394, and note; 3 Wood. Lec. 491. This is more like a case of plurality of gifts than of rights, so far as any consequences of delay are concerned. "An election by the obligor or promisor is not common, and it is usually and oftenest used as a legal term, as the choice of one of two things, to each one of which the party choosing has equal right, but both of which he cannot have." 2 Bouv. Law Dict. 520, "Election," in note. In such a case the rights of the other party would be likely to suffer by delay. The party to *receive* would usually suffer only the displeasure of long waiting, or of disappointment up to the time it becomes necessary to demand that the election be made, or to bring suit to enforce it.

In the view taken above of the full import of what is meant by the "equities of the case," the company had the right to postpone its election until it could obtain information of all the facts and circumstances above mentioned necessary to a sound judgment of the election it ought to make. "An election will not be compelled, until the party has had time and opportunity to become fully informed of the facts affecting its choice." *Macknet v. Macknet*, 29 N. J. Eq. 54; *Kreiser's Appeal*, 69 Pa. St. 194; *Hall v. Hall*, 2 McCord, Eq. 269; *United States v. Duncan*, 4 McLean, 99; 6 Am. & Eng. Ency. Law, 254; *Dabney v. Bailey*, 42 Ga. 521; *Reaves v. Garrett*, 34 Ala. 558. Can the court say that a few days over three months was an unreasonable time for the company to become fully informed of all the

facts bearing on the question of what would be most equitable for the company to do in making the election? It seems to me not. The plaintiff had not suffered anything in her rights, and had not been pecuniarily injured in the least, and had not changed her condition in any respect by reason of the delay.

It may be that the following principle would obtain and be applicable to such an election: " On the failure of a person, who has the right, to make an election in proper time, the right of election passes over to the opposite party." Co. Litt. 145*a;* Bac. Abr. and Vin. Abr. tit. " Election; " Hopk. Ch. 337. The plaintiff did not take advantage of this principle, and elect to have the insurance, before she received notice of the election made by the company; nor did she predicate this action for the insurance on the ground of the unreasonable delay of the company to make the election. She has never complained of the delay, either by notice or pleading, or until on the trial of the action. The judgment for the plaintiff for the full insurance on the sole ground of this short delay, which had not injured the plaintiff in the least, was quite too strict a construction of this kind of an election. There does not appear to have been any ground for holding that the delay was unreasonable.

*By the Court.*— The judgment of the superior court is reversed, and the cause is remanded with direction to render judgment for the plaintiff for only the amount of the premiums paid upon both policies and interest thereon.

COLE, C. J., took no part.

See note to this case in 12 L. R. A. 690.— REP.