[No. 19019.  Department One.  April 21, 1925.]

INLAND EMPIRE DAIRY PRODUCERS ASSOCIATION, *Appellant*, v. E. A. MELANDER *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES (28)—HUSBAND AND WIFE (17, 65)—TRANSACTIONS BETWEEN—GIFTS—WIFE'S SEPARATE ESTATE.  Where, by a marketing contract entered into with a dairy association by a husband in behalf of the community, he was permitted to withdraw from the dairy business at any time and end all liability under the contract, his actual transfer of the dairy stock and business to his wife, even if as a gift, making the same her separate property, cannot be attacked for fraud or want of good faith, where the title actually passed and there is no proof that the same was held by her in trust for the community;· in view of Rem. Comp. Stat., §§ 6900, 6902, relating to the right of the wife to acquire and control separate property and contract with reference thereto.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 15, 1924, upon findings in favor of the defendants, in an action for an injunction, tried to the court.  Affirmed.

*Garrecht & Twohy,* for appellant.

*Guy B. Groff* and *William Hatch Davis,* for respondents.

[1]Reported in 235 Pac. 12.

PARKER, J.—The plaintiff, a cooperative marketing association, commenced this action in the superior court for Spokane county, seeking an injunction restraining the defendants, Mr. and Mrs. Melander, from selling their dairy products to others in alleged violation of a membership marketing contract entered into with the association by Mr. Melander in behalf of the community composed of himself and wife. A trial in the superior court for that county upon the merits resulted in findings and judgment denying to the association any relief, from which it has appealed to this court.

Sometime prior to May 1, 1922, Mr. Melander, in behalf of the community composed of himself and wife, entered into a membership marketing contract with the association, by which he agreed "to sell and deliver to the association all the milk produced by or for him in Washington or any place tributary to Spokane" for a stated period. Among other provisions in the contract is the following:

"The dairyman shall have the right to close his dairy at any time in his free discretion; but if he produces any milk or acquires or owns an interest in any, during the term hereof, it shall all be included under the terms of this agreement and must be sold only to the association."

The contract, it was agreed, should become effective on May 1, 1922. At the time of entering into the contract and up to May 1, 1922, Mr. Melander and his wife were the owners, as their community property, of some 23 head of dairy cows constituting the stock of their dairy farm which was being operated by them tributary to Spokane. On that day Mr. Melander, with a view of withdrawing from the dairy business and not having any further responsibility with reference thereto or

any interest therein, executed and delivered to his wife a bill of sale for all of their dairy cows, conveying absolute title therein to her as her separate property. The valuable consideration passing from her to him for this conveyance was the assumption by her as her separate debt of a balance of $1,100 due upon a chattel mortgage upon the cows. To whatever extent the value of the cows exceeded this amount, the conveyance may be considered as a gift of the cows from him to her to become her separate property.

Thereafter Mr. Melander assumed his former employment as station agent for the Great Northern Railway Company, an employment in which he had been engaged for the most part for a number of years, though apparently not so engaged for sometime prior to May 1, 1922. In any event, ever since then he has exercised no control whatever over this or any other dairy business, and has at all times since then disclaimed all interest therein and assumed an attitude with reference thereto wholly consistent with Mrs. Melander's separate ownership of the cows and the business. No milk was ever furnished by Mr. or Mrs. Melander under the contract made by Mr. Melander with the association to become effective May 1, 1922; he refusing to furnish milk to the association because he and the community had gone out of the dairy business, and she refusing to furnish milk to the association because she was not separately bound by the contract entered into with the association.

The contention here made in behalf of the association is, in substance, that the sale and conveyance of the cows and the dairy business from Mr. Melander and the community to Mrs. Melander to become her separate property, was without consideration and not made in good faith. We have seen by the above quotation

from the contract that Mr. Melander, and the com-
munity represented by him in the making of the con-
tract, had the absolute right to withdraw from the dairy
business, and thereby relieve himself and the com-
munity from all liability under the contract. Now
whatever may be said touching the question of his good
faith in thus withdrawing from the dairy business, we
think his attitude in that behalf can be inquired into
only to the extent of determining whether or not there
was an actual transfer of title of the cows and the dairy
business to Mrs. Melander, such as made the cows and
the business her separate property and business. We
are quite unable to see how his motives for making the
transfer of title, even though it be a pure gift on his
part, can affect the question of the cows and the busi-
ness becoming her separate property after May 1st,
1922. It seems to us that, in order to defeat his right
to so withdraw from the dairy business and her abso-
lute right to acquire and continue it as her separate
property and business, the court would have to be able
to see that the title did not pass to her in her separate
right, but passed to and became holden by her in trust
for the community. Under the laws of this state a
wife has just as much right to separately own property
as the husband has. She also has the right, as he has,
to manage her separate property and separately enjoy
the earnings thereof. Referring to sections of Rem-
ington's Compiled Statutes, we read:

"§ 6900. Every married person shall hereafter have
the same right and liberty to acquire, hold, enjoy, and
dispose of every species of property, and to sue and
be sued as if he or she were unmarried." [P. C.
§ 1420.]

"§ 6902. Contracts may be made by wife, and lia-
bilities incurred, and the same may be enforced by or
against her to the same extent and in the same manner
as if she were unmarried." [P. C. § 1430.]

A painstaking review of the evidence, brought here by a full statement of facts, convinces us that the good faith of the sale and transfer of the cows, carrying with it the dairy business, from Mr. Melander to Mrs. Melander, is clearly and convincingly established to the extent of rendering it certain that by the transfer Mrs. Melander became the absolute owner of the cows and the business as her separate property, free from all claim of ownership or control in Mr. Melander. She, to our mind , is in separate right as free from the obligations of the contract entered into with the association by Mr. Melander in behalf of himself and the community as if she were an entire stranger to him. We do not overlook the fact that the dairy business is carried on by Mrs. Melander on a farm owned by herself and Mr. Melander as their community property; but the fact remains clearly proven that he has no interest in, or control over, the cows or the dairy business.

The judgment is affirmed.

TOLMAN, C. J., MAIN, BRIDGES, and ASKREN, JJ., concur.