WATERTOWN MILK PRODUCERS CO-OPERATIVE ASSOCIA-
TION, Appellant, vs. VAN CAMP PACKING COMPANY
and another, Respondents.

*April 3—July 5, 1929.*

For the appellant there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *E. J. Gross.*

For the respondents there was a brief by *Walter Drew* of Milwaukee, attorney for the Van Camp Packing Company, and *R. W. Lueck* of Watertown, attorney for John P. Stark, and oral argument by *Mr. Drew* and *Mr. Lueck.*

The following opinion was filed April 30, 1929:

OWEN, J. The plaintiff is a co-operative corporation organized under ch. 185, Stats. It brings this action to restrain the Van Camp Packing Company from unlawfully interfering with the contracts of its members in violation of the provisions of sec. 185.08, Stats. The material portions of the complaint will appear as we proceed. Sec. 185.08 is set out in the margin.[1] Certain members of the association, among

---

[1] 185.08 (1) An association created under sections 185.01 to 185.22, inclusive, shall have all the powers of a corporation organized under section 180.02, subject to the provisions of section 185.20.

(2) Contracts between any association and its members, whereby such members agree to sell all or a specified part of their products to or through, or to buy all or a specified part of goods from or through the association or any facilities created by the association, shall, if otherwise lawful, be valid; provided that the term of such contracts does not exceed five years; provided, however, that this requirement shall not prevent such contracts from being made self-renewing for periods not exceeding five years each.

(3) A provision in any such contract determining a specific sum to be paid by the member as liquidated damages for breach of said contract shall be valid; provided, that the amount of said liquidated damages does not exceed thirty per cent. of the value of the products which are the subject of the breach. In lieu of a specific sum, such liquidated damages may be stated to be an amount equal to a certain percentage, not exceeding thirty per cent., of the value of

them John P. Stark, were made parties defendant upon their own petitions, and the complaint was correspondingly amended, but asked no relief as to such members. The defendants Van Camp Packing Company and John P. Stark filed answers to the amended complaint, to which answers plaintiff demurred, which demurrers were overruled. From the order overruling such demurrers plaintiff appeals. Under familiar principles, these demurrers reach back to the complaint, and in this court respondents address their principal argument to the question of whether the complaint states a cause of action, and a considerable portion of this argument is addressed to the proposition that the law itself is invalid. This contention is based upon that feature of the law which permits the association to file in the office of the register of deeds a copy of its uniform contract with its members, together with a sworn list of the names of all makers of such contract residing in any such county, which filing shall constitute notice to any and all persons that an interest in the property so agreed to be sold by the maker of such contract during the term of such contract is vested in the said association, and that in case of a purchase thereafter of any such property by any party other than the association from any

the products which are the subject of the breach. Where a specific sum is provided as liquidated damages, but the specific sum exceeds thirty per cent. of the value of the products which are the subject of the breach then the contract shall be construed as providing for an amount equal to said thirty per cent. The provisions of this subsection shall apply to all contracts authorized by subsection (2) of this section, whether heretofore or hereafter made.

(4) The association, in the event of a breach or threatened breach of any such contract by a member, shall be entitled to an injunction to prevent the breach or further breach thereof and to a decree for specific performance. Pending the final determination of such an action and upon the filing of a verified complaint showing the breach or threatened breach, and upon the filing of a sufficient bond, the association shall be entitled to a temporary restraining order and preliminary injunction against the member.

(5) The association may cause to be filed in the office of the register of deeds of the county in which the member maker of such contract resides, a copy of any such contract to sell to the associa-

party other than the association, no title of any kind or nature shall pass to such other purchaser, and making any person so dealing with a member liable for a return of the property to the association and subject to an injunction.

It is said that this provision of the law interferes with the right of the Van Camp Packing Company to contract and do business, in violation of its constitutional rights. Without question, the right of contract is a valuable right, but, like any other property right, it is subject to the police power of the state and may be regulated and restrained in the public interest. It is the manifest purpose of our legislature to promote the organization and success of co-operative marketing associations. This is in obedience to a widespread and

tion. In case it has more than one contract in any one county, it may cause a copy of any uniform contract together with a sworn list of the names of all makers of such contracts residing in any such county to be so filed. Such sworn statement shall contain the further statement that the said uniform contract and such sworn statement are filed pursuant to the provisions of this section. The register of deeds shall file such contracts and shall make indorsements thereon and entries thereof in the same manner as is provided by section 241.10 of the statutes with reference to filing chattel mortgages, and shall be entitled to receive the same fees for filing as in the case of chattel mortgages. From and after the date of such filing the same shall constitute notice to any and all persons that an interest in the title to all property so agreed to be sold by the maker of such contract during the term of such contract is vested in the said association. In case of a purchase thereafter of any such property by any party other than the association from any party other than the association, no title of any kind or nature shall pass to such other purchaser, and the said association may recover the possession of such property from any and all such other parties or from any party in whose possession the same may be found, by replevin action, or may sue for an injunction. Any action under the provisions of this section shall be tried in the circuit court of either the county where the property which is the subject of such contract is located at the time of commencement of such action, or in the county where such association has its principal office, according to its articles of incorporation.

(6) Where any contract exists between an association and a member, any person who, with knowledge or notice of the existence of the contract, induces or attempts to induce or aids in the breach thereof by any means, shall be liable to the aggrieved party for

rapidly growing public opinion that such associations afford an economic relief necessary to the welfare and perpetuation of the farming industry. That the necessities of that industry present a legitimate basis for classification in relieving such associations from the sweep of anti-trust laws was held by this court in *Northern Wisconsin Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936, and such has been the rule of many courts elsewhere. See cases reviewed and cited in *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Asso.* 276 U. S. 71, 48 Sup. Ct. 291. In the latter case it is said: "It is stated without contradiction that co-operative marketing statutes substantially like the one under review have been enacted by forty-two states. Con-

---

damages on account of such interference with said contract and shall also be subject to an injunction to prevent the interference or further interference therewith.

(7) Upon the filing of any such contract and the sworn statement containing the name of the maker or makers of such contract with the register of deeds, as provided by subsection (5) of this section, the same shall constitute notice that such contract, for the purposes of this section, is and remains a valid contract as to all persons, until its expiration according to its terms, or until canceled by mutual agreement in writing or by the final judgment of a court in an action to annul the same. Whenever such a contract shall have terminated in any of the ways above mentioned, the association shall on demand give to the member a certificate to that effect, and the member shall within ten days thereafter cause the said certificate to be filed with the register of deeds in whose office the copy thereof was filed. The register of deeds shall be entitled to the same filing fees under this subsection as in the case of chattel mortgages under section 241.10.

(8) The legislature intends that subsection (5) of this section shall protect property interests of an association under those contracts to sell to the association which are specifically authorized by subsection (2) of this section. The legislature intends that subsection (6) of this section shall prevent wrongful interference with any contract between an association and its member, no matter whether said contract is such a contract to sell to the association or is one of agency or otherwise, and regardless of whether said contract is specifically authorized by subsection (2) of this section or not, and irrespective of whether the interference is with the rights of the association or of the member under said contract.

gress has recognized the utility of co-operative association among farmers in the Clayton Act (38 Stats. 731, 15 U.S.C.A. § 17), the Capper-Volstead Act (42 Stats. 388, 7 U.S.C.A. §§ 291, 292), and the Co-operative Marketing Act of 1926 (44 Stats. 802, 7 U.S.C.A. §§ 451–457)."

The successful establishment of these associations has been attended with many obstacles. Those with whom such associations come in competition have been resourceful and active. They have appealed to the guilelessness and cupidity of the members with a view of breeding dissatisfaction on their part with the association and inducing them to breach their contracts. A phase of this sort of campaign was dealt with in the *Bekkedal Case,* 182 Wis. 571, 197 N. W. 936, and it is believed that sec. 185.08 of the Statutes, which has been built up by successive legislatures, was enacted to meet situations which experience showed was threatening the success of such associations and to compel all outsiders to keep "hands off" in the relations existing between the associations and their members. The sum and substance of sec. 185.08 is to prevent any one from buying the products of a member of such an association during the time when he is under contractual obligation to deliver his product to the association. We might indulge in much discussion to show that such limitation upon the liberty of contract is justifiable in the promotion of the general welfare, but will content ourselves with resting upon the decision of the United States supreme court in the *Liberty Warehouse Co. Case,* 276 U. S. 71, 48 Sup. Ct. 291, where a similar provision of a Kentucky statute was upheld against an assault in all respects similar to that here made. We hold the provisions of sec. 185.08 a valid and constitutional enactment.

The attack upon the statute is followed by an attack upon the contract. It is first said that the uniform contract is void for want of mutuality. This is a proper contention to be made at least by John P. Stark, the defendant member of

the association. By the contract the member "appoints the association his sales agent to sell all the milk or manufactured product thereof produced by him or on farms controlled by him, and to deliver said milk or the manufactured product thereof as the association may from time to time direct." However, there is no provision in this contract by which the association agrees to do anything for the member. This gives rise to the lack of mutuality which it is contended renders the contract invalid under general and well understood principles of the common law. It might be difficult to sustain the validity of this contract if its validity depended upon those principles. But the legislature may change the principles of the common law, and in so far as these contracts are concerned it seems to have done so by the provisions of sec. 185.08 (2), which provides:

"Contracts between any association organized under sections 185.01 to 185.22, inclusive, and its members, whereby such members agree to sell all or a specified part of their products to or through, or to buy all or a specified part of goods from or through the association or any facilities created by the association, shall, if otherwise lawful, be valid."

The legislative purpose here seems to be to make the agreement of the member of the association a binding and enforceable agreement irrespective of any agreement on the part of the association to the member. This provision of the statute withdraws from our consideration the question of whether this contract is void for lack of mutuality.

It is contended that the contract is void for uncertainty. This is based upon the stipulation for liquidated damages appearing in the contract in the following language:

"The producer covenants and agrees to and with the association that if he at any time refuses or neglects to deliver such milk or the manufactured product thereof produced or manufactured by him to the association, or, upon its order, at such time and place as the association may direct, then and

in that event in every such case the producer neglecting or refusing so to do will pay to the association, for each refusal or default, a sum of money not exceeding one fifth of the value of the products which are the subject of the breach, none of which payments are to be construed to be a penalty or forfeiture, but as stipulated liquidated damages as pre- scribed by the statutes of Wisconsin, and it is hereby agreed that the association will suffer by reason of such refusal or default, and it is hereby understood and agreed that this is a contract for the purchase and sale of personal property under special circumstances and that the association cannot go upon the open market and buy products to replace those which the producer may fail to deliver or to sell the products which the producer may fail to accept."

It will be observed that sec. 185.08 (3) provides that such contracts may determine a specific sum as liquidated damages for breach thereof, or in lieu of a specific sum such an "amount equal to a certain percentage, not exceeding thirty per cent., of the value of the products which are the subject of the breach." The contention here is that the contract does not fix an amount equal to a certain percentage of the value of the products which are the subject of the breach. The contract fixes a "sum of money not exceeding one fifth of the value of the products which are the subject of the breach." It does not fix twenty per cent. of the value of the products as stipulated liquidated damages. It simply provides that it shall not be more than twenty per cent. It may be five, ten, or fifteen per cent. Manifestly this is not what the statute means. The statute means that the contract may fix any percentage which shall not be more than thirty per cent. of the value of the products subject to the breach. This per- centage, whatever may be agreed upon, must be stipulated in the contract. If twenty-five per cent. is agreed upon, that must be stipulated. We consider this particular provision of the contract void, but that does not invalidate the entire con- tract. It was no inducement to the agreement of the member.

It was for the benefit of the association and in the nature of a penalty on the member in case he breached the contract. If the penalty cannot be enforced the member cannot invoke that circumstance to invalidate the entire contract.

It is next contended that par. (6) and (7) of sec. 185.08, Stats., should not be construed as applying to the contracts here under consideration, because to do so would make them retroactive and impair the obligations of contracts. So far as par. (6) is concerned, we are not concerned with it in this action. No cause of action is set forth under it in the complaint. That paragraph is plainly intended to reach those who attempt to bring about breaches of contracts between the association and its members, but who have not subjected themselves to the remedies prescribed by par. (5). It was intended to reach a class whom the prior provisions of the law did not reach. At any rate it is not subject to a retroactive construction. It merely prohibits certain conduct after the passage of the law. After its passage one may not attempt to induce a breach of a contract between the association and its members without incurring the penalty therein prescribed, no matter whether the contract was in existence prior to the passage of the act or was culminated thereafter. So far as the members of the association are concerned this paragraph affects them not at all. Prior provisions of the law effectually foreclosed them of the so-called right to breach their contract.

Par. (4) provides that "The association, in the event of a breach or threatened breach of any such contract by a member, shall be entitled to an injunction to prevent the breach or further breach thereof and to a decree for specific performance." Whether the breach of a contract be considered a right which the constitution protects or a wrong which the law seeks to redress, par. (4) effectually forecloses any such breach on the part of the members of co-operative associa-

tions. It is not perceived that par. (6) has any bearing upon the case. The same is true of par. (7). The effect of par. (7) is to charge the Van Camp Packing Company with notice that the contracts filed with the register of deeds constitute and remain valid contracts within the purview of that law until terminated in the manner provided and a certificate of that termination is filed with the register of deeds. Those who after the passage of this law deal with the members of the association upon the assumption that their contracts have been terminated do so at their peril. We think that the complaint states a good cause of action under sec. 185.08 (5).

Defenses are set up in both answers, however, which justified the overruling of the demurrers. It was held in the *Bekkedal Case,* 182 Wis. 571, 197 N. W. 936, that outsiders would be restrained from interfering or intermeddling with contracts existing between such associations and their members with a view of inducing breaches thereof. It was also held that where a member voluntarily breached his contract, any person was at liberty to purchase the product affected by such contract. Sec. 185.08 (5) has substantially modified the effect of such contracts as well as the rights of others to purchase the product affected by such contracts. The title to the product affected by the contract is vested in the association. Others purchasing the product, charged with constructive notice of the existence of the contract, acquire no title thereto. But the person so purchasing must be charged with constructive notice in order to be subject to the consequences denounced by par. (5). The idea of the law is that the filing with the register of deeds of a copy of the uniform contract, together with a sworn list of those who have entered into the contract, gives such constructive notice. However, in order for such filing to so operate, the provisions of the statute must be substantially complied with. The answer alleges that the copy of the so-called uniform contract filed with the register of deeds of Dodge and Jefferson counties

was not the contract entered into by the great bulk of the members of this association. If this be true, it does not amount to a substantial compliance with the statute. It would amount to notice only with reference to those who had in fact signed the contract, copy of which was filed. If a proportion of the members signed some other contract, not filed, there would be no constructive notice as to them. This is a defense which may properly be made. The answer of Stark alleges a breach of the contract on the part of the co-operative association, which breach consisted of a demand on the part of the association or its representative that he install expensive appliances on his premises for the proper cooling of the milk, thereby supplanting his existing method, and imposing upon him an expense which made it impossible for him to comply with the contract. If this be true, it may relieve Stark of the obligations of his contract on the ground that the act of the association prevented performance on his part. 5 Page, Contracts, § 2918. The further question arises whether this allegation in Stark's answer can be made available as a defense to the action against the Van Camp Packing Company. It has been a little difficult to discover any reason for the presence of Stark in this action, or for an answer to the complaint on his part, as the plaintiff seeks no relief against Stark. However, upon more mature consideration it appears that Stark has treated the contract as at an end through abandonment or breach thereof on the part of the association. If such be the case, he would seem to be entitled to market his product elsewhere. He is therefore interested in the question of whether the Van Camp Company is at liberty to purchase his product. Should the judgment in this case establish the termination of the contract, thereafter the Van Camp Company undoubtedly may purchase Stark's products. Whether the Van Camp Company may plead such a termination, there is no question that it may be so pleaded by one of the parties to the contract. In view of

the presence of these defenses, and perhaps some others, the demurrers were properly overruled. However, much is set up in the answers that is clearly immaterial. For instance, the representations made, including reflections upon defendant's business, in order to secure the contracts, is not material. The Van Camp Packing Company cannot challenge the validity of these contracts. The law prevents it from purchasing this product if it be charged with constructive notice of the existence of such contracts, and since the enactment of ch. 167, Laws of 1927, that provision attaches until a notice of the termination of such a contract is filed with the register of deeds as provided in sec. 185.08 (7). Neither is the defense set up in the answer to the effect that plaintiff is in court with unclean hands of sufficient consequence to deny relief.

*By the Court.*—The order appealed from is affirmed.

On July 5, 1929, a motion for a rehearing was denied, and the following opinion was filed July 10, 1929:

OWEN, J. (*On motion for rehearing.*) On the brief in support of a motion for rehearing the able attorney for the respondent assumes that the court did not understand his position and argument, that being the only reason he can assign for the conclusion of the court. A reconsideration of the case reassures us that we perfectly understood him, and as we can account for his brief on no other theory than that he misunderstood us, the situation justifies a patient effort to greater clarity.

Counsel impugns the opinion as unsound and inadequate. Our conviction of its soundness is strengthened by the review pursuant to the motion for rehearing. If our failure to mention and discuss every point made in the brief and argument stamps the opinion as inadequate, it is a deficiency common to most judicial opinions when reviewed by the immediate

parties to the litigation. It is not always deemed essential for proper disposition of cases submitted, to discuss every question presented. Questions raised which in the opinion of the court are without merit, and exercise no influence upon the disposition of the case, may be passed without mention. A contrary policy would unduly extend opinions, with neither satisfaction nor service to the profession.

Counsel refuses to accept our construction of sub. (2) of sec. 185.08, Stats., which provides that "Contracts between any association . . . and its members, whereby such members agree to sell all or a specified part of their products to or through, or to buy all or a specified part of goods from or through the association or any facilities created by the association, shall, *if otherwise lawful,* be valid," and continues to riddle the contracts between the association and its members because they lack mutuality and are indefinite and uncertain. But these infirmities inhere in the simple, unilateral agreements which the statute sanctions as valid contracts. Unless the legislative purpose was to rescue such agreements from these manifest common-law infirmities, the object of the legislation is obscure. No other reason is apparent. Counsel assigns none. In fact, he would have us treat this provision as a mere resounding declamation. Courts ascribe to legislative acts greater deference. They regard the legislature as a body of purpose, and refuse to construe their acts as mere declamations. If the object of their enactments be obscure, they seek to discover the legislative purpose and, when discovered, give it effect. We have no difficulty in discovering the purpose of this enactment. It is quite manifest. The legislature anticipated just such attacks as are here made upon the agreements which it was intended should constitute valid and binding contracts. Their vulnerability to common-law principles was appreciated. It was proposed to make such agreements immune from such attacks. It

was therefore provided that such agreements should be valid if "otherwise lawful." The phrase "otherwise lawful" cannot be construed to include infirmities inherent in the agreements declared to constitute lawful contracts. That phrase refers to extraneous considerations, such as incapacity to contract or fraud in their procurement. By force of this statutory provision a simple, unilateral agreement on the part of the member to sell all or a specified part of his product to or through the association is a valid contract even though it lacks mutuality or is wanting in definiteness and certainty. This conclusion makes unnecessary a weary recitation of the many respects in which it is claimed these contracts are uncertain and indefinite. The same answer must be made to each and every one.

Further complaint is made because the contract between the association and its members "purports to bind the member, not only by its own uncertain provisions, 'but by each provision, agreement, and contract' contained in the articles, by-laws, rules, and regulations 'heretofore or to be hereafter adopted by the association.' " If this provision were invalid, it would not necessarily invalidate the entire contract. But it is not invalid. There is no reason why persons *sui juris* may not agree to be bound by the articles, by-laws, rules, and regulations of the association of which they are members. Such agreements are very common in mutual insurance contracts, and, so far as our observation goes, they are uniformly enforced.

Counsel still contends that the provisions of sec. 185.08 (7) work an impairment of an express contract right if they be held applicable to existing contracts between the association and its members, although such contention is now limited to the proposition that the contract itself expressly provides that it "shall be effective for five years from the date of signing thereof and shall continue thereafter from year to

year subject to the right of either party to terminate liability hereunder by giving written notice to the other party at least thirty days before the expiration of this contract." It is claimed that this provision of the contract is violated by sub. (7), which provides that the filing of such contract "shall constitute notice that such contract, for the purposes of this section, is and remains a valid contract as to all persons, until its expiration according to its terms, or until canceled by mutual agreement in writing or by the final judgment of a court in an action to annul the same." The argument is that the provisions of said sub. (7) destroy the absolute right of the member to cancel his contract in accordance with its terms.

Such is not the effect of sub. (7). It affects that right not at all. The member may give the notice provided by the terms of the contract and the result will be the cancellation of the contract. Sub. (7), as pointed out in the opinion, operates on those who would purchase the products of the member. They may not ignore the contract until evidence of its cancellation is placed on file. This is a provision apparently deemed essential to promote the successful operation of co-operative associations. While it is conceivable that embarrassment might result to a member who has canceled his contract, in his inability to sell his product to others, it is to be borne in mind that regulatory provisions under the police power deemed essential for the public welfare frequently result not only in embarrassment but in hardship to some who are required to bear it for the public good. Embarrassment will arise from inability to place on record evidence of termination of the contract. But his difficulty is more of a possibility than a reality. When he terminates his contract in the manner provided by the terms thereof he will be entitled to a certificate from the association that his contract is terminated, which he may place on file. Should such

a certificate be refused he will be in the position of those who are entitled to the performance of a duty on the part of another which such other refuses to perform. The possibility that in isolated cases a member may be compelled to resort to an action in court to secure his rights cannot be held to amount to an impairment of his original contract.

It is further argued that the filing of these contracts with the register of deeds does not amount to an efficient constructive notice to the Van Camp Packing Company for the reason that the term of the contract cannot be ascertained from the copies filed. This is due to the fact that the form of the contract filed does not reveal the date upon which the particular contract was signed and that the contract itself provides that the member will market his products with the association "when the association is equipped for same." Thus it is argued that the Van Camp Packing Company cannot tell from this record when the contract is in force.

It does not matter to the Van Camp Packing Company when the contract in fact terminates. It is prohibited from buying the products of these members until a certificate of termination is filed with the register of deeds. As stated in the opinion, until that certificate is filed it deals with the members of the association at its own peril.

It does not appear from the face of the contract the exact time when it becomes effective. But this is of very little significance in this case. The Van Camp Packing Company is not insisting upon its right to deal with the members of this co-operative association on the theory that these contracts never were in force, but rather on the theory that they have expired or that they have been breached. The pleadings in the case raise no issue upon the indefiniteness of the time when these contracts became effective further than that such indefiniteness rendered the contract void. In any event, no such contention can be sustained. This is an indefiniteness

that must more or less characterize all such contracts, especially those entered into during the time when the association is being perfected. The statute makes the filing of these contracts constructive notice of the terms thereof. The Van Camp Packing Company had notice that these contracts were effective "when the association is equipped" for marketing the milk and dairy products of the members. The filing of the contracts, therefore, placed all persons upon inquiry as to whether the association was so equipped and whether the contracts were really effective. It became the duty of all persons to ascertain the fact in this respect before assuming to deal with the members of the association.

It is further claimed that we ignored the contention that the complaint was bad because it failed to allege an intention on the part of the Van Camp Packing Company to violate the rights of the plaintiff in the future, and it is assumed that because no mention was made of this, the holding in *State v. P. Lorillard Co.* 181 Wis. 347, 193 N. W. 613, that such an allegation was essential in a complaint praying for an injunction, is overruled. That was passed over without mention because its discussion could serve no useful purpose. As stated in the *Lorillard Case,* such an allegation is essential. It is lacking in this case. A demurrer to the complaint would have been sustained. But there was no demurrer to the complaint. The defendants answered, and by their answers they supplied the substance of this essential allegation. A demurrer to the answer searches the record. It goes back to the complaint. If the complaint is bad the demurrer will be overruled, as a bad answer is considered good enough for a bad complaint. However, where the entire record reveals facts constituting a good cause of action, a demurrer to the answer will not be overruled on the ground that the complaint does not state facts sufficient to constitute a cause of action. *Colwell Lead Co. v. Home Title Ins. Co.* 154 App. Div. 83,

138 N. Y. Supp. 738; *Sill v. Sill,* 31 Kan. 248, 1 Pac. 556. While there are decisions holding that upon a demurrer to the answer the averments in the answer will not be permitted to supply a deficiency in the complaint, we find very little considerate discussion of the subject. It is discussed in *Sill v. Sill, supra,* and in *Broughton v. L. & N. R. Co.* 217 Ky. 297, 289 S. W. 237, where a contrary conclusion is reached. There is language to be found in *Stephens v. Wheeler,* 193 Wis. 164, at p. 172 (213 N. W. 464), which might be taken as an intimation that the allegations of the answer will not be permitted to supplement the complaint where the sufficiency of the complaint is drawn in question by a demurrer to the answer. However, this question was not involved in that case, and the question we are now discussing was not considered by the court. Upon mature consideration, it would seem that the cause of simplified procedure is illy served by a rule which ignores the allegations of the answer where the complaint is under scrutiny by virtue of a demurrer to the answer. Where in such case it appears that essential facts omitted in the complaint are supplied by the answer of the one who challenges the complaint, why should the litigants be required to retrace their steps and frame new pleadings all along the line? We can see no reason for such a procedure except fidelity to form and homage to precedent. The result is delay, additional work, and a cumbersome record, with compensation to no one. Furthermore, the adoption of respondents' contention would not have affected the mandate in this case. The order overruling the demurrer would still have been affirmed.

*By the Court.*—The motion for rehearing is denied, with $25 costs.