WESEMANN, Respondent, vs. WATERTOWN MILK
CO-OPERATIVE ASSOCIATION, Appellant.

*September 15—October 13, 1936.*

*Joseph Lieberman* of Milwaukee, for the appellant.

For the respondent there was a brief by *Grady & Dakin* of Watertown, and oral argument by *Harold M. Dakin.*

NELSON, J. The contentions of the defendant give rise to two questions: (1) Did the court err in overruling the demurrer to the complaint? (2) Are the findings of the court against the great weight and clear preponderance of the evidence?

The following facts are supported by the evidence: The plaintiff is a farmer, about thirty-one years of age. He operates a farm belonging to his mother, as her tenant. The farm is located in the town of Watertown. The defendant is a Wisconsin co-operative organized under ch. 185 of the statutes. William Wesemann, not a party to this action, is the plaintiff's father. Prior to April 16, 1931, William Wesemann was the owner of the farm and the stock and personal property situated thereon. Sometime prior to April 16, 1931, William Wesemann entered into a co-operative contract with the defendant and thereby became a member of that association. The relevant provision of that contract is as follows:

"2. The member agrees to deliver to the association *all milk produced by him* and appoints the association his sales agent to sell the same, and the association agrees to handle and market such milk in accordance with the terms of this contract."

Prior to April 16, 1931, William Wesemann delivered all of the milk produced by him to the defendant. The record is barren of any testimony to show any dispute or trouble between him and the defendant. On or about April 16, 1931, William Wesemann conveyed his farm to his wife and sold to the plaintiff all of the personal property situated thereon. Thereafter the plaintiff leased the farm from his mother for an annual cash rental of $400, operated the farm as her tenant and exercised full dominion and ownership over the cows and the personal property purchased from his father. The plaintiff continued to deliver milk to the de-

fendant during the remainder of 1931, during 1932, and until May, 1933. During all of that time the defendant apparently refused to recognize the plaintiff as the owner of the cows and the producer of the milk delivered to it and continued to issue its checks in the name of William Wesemann, the father, although request was made by and on behalf of the plaintiff to issue the checks in his name. In 1933, the plaintiff discontinued delivering milk to the defendant and thereafter, for a period of about two years, sold it to the United Milk Products Company. An action was started by the defendant against the Products Company to restrain it from purchasing the milk produced by the plaintiff. That action was apparently settled by the Products Company agreeing not to buy the plaintiff's milk thereafter. The plaintiff then tried to sell his milk to the Lake View Dairy, but the dairy refused to take the milk because it had other troubles with the defendant and did not want more trouble. The plaintiff then began to sell his milk to the Van Camp Milk Company at Watertown, but defendant's president promptly threatened that company with injunctional proceedings in case it continued to purchase milk from the plaintiff. The Van Camp Company thereupon refused to buy the plaintiff's milk, and as a consequence the plaintiff had no market until an order was issued by the judge temporarily restraining the defendant from interfering with the marketing thereof.

It clearly appears that the defendant, although informed of the asserted rights of the plaintiff to market his milk as the producer thereof, took the stand that the sale of the cows by William Wesemann to the plaintiff was a mere device or subterfuge, entered into for the sole purpose of avoiding and circumventing the contract; that it had the right to protect its contract and prevent the sale of the milk in question to anyone else, and that it had the right to threaten purchasers

of the milk, or those who were about to purchase it, with injunctional proceedings.

The court found that the plaintiff was the absolute owner of the cows, and that William Wesemann, his father, had no interest in them.

Despite the finding of the trial court that the plaintiff was the absolute owner of the cows, and that his father had no interest in them at any time material to this action, and despite the fact that those findings are supported by the evidence, the defendant asks this court to set aside those findings and hold that the sale of the cows by the father to the plaintiff was a mere device or subterfuge to avoid the performance of the contract entered into by William Wesemann and the defendant. Under the established law of this state, the findings of the trial court will not be disturbed unless they are against the great weight and clear preponderance of the evidence.

Assuming, therefore, that the plaintiff was the owner of the cows in question after April 16, 1931, he certainly had the right to sell his milk to whomever he pleased without interference from the defendant, since he was not a member of that association. It is clear that the bringing of an action against the United Milk Products Company to whom the plaintiff was selling milk and the threats to bring similar actions against the Lake View Dairy and the Van Camp Milk Company caused those companies to refuse to take the plaintiff's milk.

It is our conclusion that the complaint which contained appropriate allegations in substantial harmony with the proofs, charged an unjustifiable and wrongful interference by the defendant with the marketing of the plaintiff's milk and stated a good cause of action.

It is not asserted by the defendant that there is anything in the contract entered into by William Wesemann and the

defendant which prohibited him from selling or disposing of any part or all of his herd. The contract, obviously, did not relate to the cows themselves but only to "all milk produced by him."

There are many cases holding that a member of a cooperative may not avoid his marketing agreement by the mere device or subterfuge of leasing his land upon which the crop is raised, to a daughter, wife, or father. *Burley Tobacco Growers' Co-op. Asso. v. Devine,* 217 Ky. 320, 289 S. W. 253; *Kansas Wheat Growers' Asso. v. Lucas,* 124 Kan. 773, 262 Pac. 551; *South Carolina Cotton Growers' Co-operative Asso. v. English,* 135 S. C. 19, 133 S. E. 542; *Monte Vista Potato Growers' Co-operative Asso. v. Bond,* 80 Colo. 516, 252 Pac. 813. See other cases listed in Hanna, Law of Co-operative Marketing Associations, in the notes on pages 242 and 243.

In the cases cited, the facts found amply supported the conclusions of the respective courts that the leasing arrangements were mere devices or subterfuges for the purpose of avoiding the contracts. Good faith in the leasing was found to be lacking. In controversies like this, involving the delivery of milk produced by a member of a co-operative, the real question to be determined is whether there was an actual *bona fide* transfer of the title or ownership of the cows belonging to the member of the co-operative to another. *Inland Empire Dairy Producers' Asso. v. Melander,* 134 Wash. 145, 235 Pac. 12; *Inland Empire Dairy Producers' Asso. v. Casberg,* 134 Wash. 702, 235 Pac. 13; *State ex rel. Seattle Milk Shippers' Asso. v. Superior Court,* 130 Wash. 668, 228 Pac. 847.

The trial court, after hearing the evidence, found the relevant, ultimate facts in favor of the plaintiff. While the trial court might have permissibly reached a different conclusion from certain evidence in the record, which need not

presently be recited, that is of little consequence on appeal where the facts as found are supported by the evidence.

While this court has upheld all of the provisions of ch. 185, Stats., which thus far have been assailed on appeals to this court, *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936; *Watertown M. P. Co-op. Asso. v. Van Camp P. Co.* 199 Wis. 379, 225 N. W. 209, 226 N. W. 378; *Spencer Co-op. Live Stock S. Asso. v. Schultz,* 209 Wis. 344, 245 N. W. 99, it does not follow that cooperatives are exempt from liability for wrongs done to another.

*By the Court.*—Judgment affirmed.